## JAY REALTY, INC. *v.* AHEARN DEVELOPMENT CORPORATION
### (10312)

HEALEY, PARSKEY, SHEA, GRILLO and F. HENNESSY, Js.

Argued November 10, 1982—decision released January 11, 1983

*Dennis C. Lanzoni,* for the appellant (plaintiff).

*William F. Gallagher,* with whom, on the brief, was *Elizabeth Dorsey,* for the appellee (defendant).

GRILLO, J. This appeal from the judgment rendered dissolving a prejudgment attachment addresses the legal sufficiency, pursuant to General

Statutes § 20-325a (b),[1] of several writings which are singly unenforceable but which, it is averred, collectively satisfy the statute and therefore create a binding contract.

The plaintiff, a real estate broker, instituted this action claiming a breach of a real estate brokerage contract relating to property purchased by the defendant from the Choate-Rosemary Hall Foundation and referred to as the Choate property. The plaintiff was granted an ex parte order of attachment. The defendant filed a motion to dissolve the prejudgment remedy, and after a hearing the trial court concluded that the plaintiff had failed to satisfy its burden of sustaining probable cause as to the validity of its claim, and dissolved the attachment. This appealed followed.

Although the plaintiff concedes that no single document satisfied General Statutes § 20-325a (b), its appeal disputes the trial court's conclusion that the various writings produced by the plaintiff do not collectively meet the statutory requirements. The defendant argues that probable cause is lacking since the documents fail to form a single, consistent contract which is enforceable under § 20-325a (b). We agree.

---

[1] General Statutes § 20-325a (b) states:

"No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the parties thereto."

In support of its claim that the statutory requisites were fulfilled, the plaintiff first relies on an aggregation of exhibits A[2] and B.[3] Although collectively these documents satisfy the statutory deficiency which is individually lacking, the addresses of both parties; *Hossan* v. *Hudiakoff*, 178 Conn. 381, 383, 423 A.2d 108 (1979); their combination raised another flaw. The writings contain different commission rates. The trial court, being

---

[2] Exhibit A represents a letter from the plaintiff to the defendant dated November 15, 1976, and states:

"Ahearn Development Corporation
88 Woodhouse Avenue
Wallingford, Connecticut

Dear Mr. Ahearn:

This is to confirm that there will be no commissions payable to this office as a result of any contract or purchase by you or any of your corporations of land owned by The Choate Rosemary Hall Foundation located on Mapleview Road, Wallingford, Connecticut, known as St. Andrews Camp and Patmos, consisting of approximately 65-67 acres.

Per our understanding, this will confirm that commissions equal to 4% of sales price shall be payable to this office on any sales of land and/or buildings subsequent to your acquisition from Choate.

JAY REALTY, INC.

By: /s/Thomas Wall"

[3] Exhibit B is a printed form of the Greater New Haven Board of Realtors, Inc., a standard multiple listing contract, signed by the defendant, the pertinent part reading as follows:

"I/We agree that whenever during the term of this agreement, the property shall have been sold or exchanged or a customer procured, ready, able and willing to buy or exchange the property on the terms authorized by me/us. I/we will pay to you a commission of 3%-house, 5%-lot of the gross sale price whether the transaction shall be effected by you, me/us or any other person or corporation." The contract is signed by the owner of Choate property and includes the address of the plaintiff.

unable to ascertain the applicable commission rates, therefore construed exhibits A and B as two separate agreements unenforceable under § 20-325a (b).

In an effort to meet the expressed concern of the trial court that the different commission rates created two separate contracts, the plaintiff offered the parol testimony of a witness in an attempt to connect the two documents and thereby create a single transaction. The court, after hearing the testimony, struck the entire response, stating that there were no circumstances justifying the admission of parol testimony and no ambiguity requiring explanation.

The ruling of the trial court was correct. The different rates of commission rendered an accurate determination of the "conditions of such contract or authorization"; General Statutes § 20-325a (b) (4); impossible. Although the plaintiff insists that collective documents relating to each other are sufficient to fulfill the requirements of the statute, this predicate assumes that the necessary proof of relationship between the writings was provided. The plaintiff relies principally on the case of *Good* v. *Paine Furniture Co.*, 35 Conn. Sup. 24, 391 A.2d 741 (1978). As the trial court stated, the holding in *Good* was that separate documents will be deemed to constitute a valid contract under § 20-325a (b) if they collectively satisfy the statutory requirements *and relate to the same agreement.* Id., 27. It is not within the power of courts to create new and different agreements. *Collins* v. *Sears, Roebuck & Co.*, 164 Conn. 369, 375, 321 A.2d 444 (1973). The trial court found that there were no connected documents. The

evidence sustains the conclusion that neither document pointed unquestionably to the other document so as to create one consistent contract.

The plaintiff's contention that the trial court impermissibly excluded parol evidence showing the connection and consistency between the two documents is without merit. Parol evidence is admissible (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. *Merritt-Chapman & Scott Corporation* v. *Mauro*, 171 Conn. 177, 193–95, 368 A.2d 44 (1976) (*Cotter, J.,* dissenting). The plaintiff asserts that if exhibits A and B relate to the same agreement, then there is one contract with conflicting rates of commission, thereby creating ambiguity justifying the introduction of parol evidence. A stated rate of commission within a contract is unambiguous. *Reese* v. *First Connecticut Small Business Investment Co.,* 182 Conn. 326, 327, 438 A.2d 99 (1980). The plaintiff's theory is flawed not only because the relationship between the exhibits is lacking, as previously discussed, but also because the conflicting rates of commission, which negate connection, have clear and definitive meanings and thus may not be explained by parol evidence. See *Maier* v. *Arsenault,* 140 Conn. 364, 368, 100 A.2d 403 (1953).

The plaintiff claims that exhibit D[4] relates to exhibit A and collectively these documents satisfy the statute. Here again, the rates of commission

---

[4] Exhibit D is a letter to the plaintiff dated August 30, 1978, signed by one Edward Loughlin, presumably a representative of the defendant, enclosing a check for a 6 percent commission.

are different in each document, contradicting the contention that these documents are consistent with and together form one contract since together they bear the address of both parties. The court was not bound to come to the conclusion that exhibits A and D formed one valid contract under § 20-325a (b) relating to the same brokerage agreement.

The plaintiff's final thrust in argument is that because exhibit B, when supplemented by exhibits E[5] or K,[6] satisfied the statutory requirements, it is therefore entitled to damages predicated on the commissions specified in exhibit B, i.e., 3 percent and 5 percent.

The plaintiff asserts that the court did not address this issue. The court, however, while not referring specifically to exhibits E or K with reference to exhibit B, concluded that the evidence was not sufficient to convert the documents so as to satisfy the statutory requirements. It was the function of the trial court to determine what weight it would ascribe to the evidence offered. *State* v. *Staples,* 175 Conn. 398, 407, 399 A.2d 1269 (1978). Even assuming the plaintiff's position is correct, it avails the plaintiff nothing since the substituted complaint clearly sought remuneration based on a combination of exhibits A *and* B, not on exhibit B in combination with exhibits E or K. The exact amount of damages claimed in all counts except one are predicated upon the 4 percent commission rate delineated in exhibit A.[7] The court could rea-

[5] Exhibit E is a letter dated January 9, 1979, from the defendant to the plaintiff discharging the plaintiff as agents.

[6] Exhibit K is a letter from Jeffrey Ahearn, dated November 1, 1978, concerning prices of lots at Laurelwood.

[7] The exception is count four, wherein the plaintiff seeks damages predicated upon the 6 percent commission rate contemplated within exhibit D. See footnote 4, supra.

sonably have concluded that exhibit B was added solely as a supplemental document to cure the lack-of-address deficiency in exhibit A.

The documents involved in this matter neither singly nor collectively satisfy the stringent requirements of § 20-325a (b).

There is no error.

In this opinion the other judges concurred.