VERNON FOODLINER, INC., ET AL. *v.* CENTRAL
MUTUAL INSURANCE COMPANY ET AL.
(2462)

DANNEHY, C.P.J., TESTO and HULL, Js.

---

[8] The plaintiff's attendance record states: "All prior points dropped."

596

Argued February 8—decision released May 1, 1984

*Frederick W. Krug,* for the appellant-cross appellee (intervening plaintiff Bozzuto's, Inc.).

*Theodore A. Lubinsky,* filed a brief for the appellee-cross appellant (named plaintiff).

HULL, J. The intervening plaintiff, in this action brought to recover insurance proceeds pursuant to a standard mortgage loss payable clause, appeals[1] from the trial court's judgment in its favor, claiming that the court erred in refusing to award statutory interest. The named plaintiff cross appeals claiming that there

---

were issues of material fact which precluded the trial court from granting the motion of the intervening plaintiff for summary judgment.

The uncontroverted facts in this case are as follows. The plaintiff Vernon Foodliner, Inc., (Vernon) was the named insured on a fire insurance policy issued by the defendant insurer, Central Mutual Insurance Company (Central). The multiperil insurance policy was in effect from June 25, 1975, to June 25, 1977, and included fire loss of Vernon's store, inventory and fixtures in the coverage. The intervening plaintiff, Bozzuto's, Inc., a grocery wholesale distributor (Bozzuto), was also a named insured under this policy pursuant to a standard mortgage or lender's loss payable clause.[2]

On February 22, 1975, Vernon's supermarket and all of its contents were substantially destroyed by fire. As of that date, Vernon was indebted to Bozzuto on an open account in the amount of $80,895.98 for merchandise delivered to Vernon prior to the fire. Vernon filed its loss claim with Central in due course and, upon Central's refusal to pay, Vernon commenced the underlying action. Bozzuto and Stoltz intervened as party plaintiffs claiming that, pursuant to the lender's loss payable clause, Central was obligated to pay directly to them the amount of the debts due them from Vernon. Central denied any liability.

At the time of the fire, Bozzuto was also a secured creditor occupying a first priority position. To secure the continuing indebtedness to Bozzuto by virtue of the open account, Vernon pledged all of its inventory merchandise and fixtures under a security agreement which Bozzuto had perfected by filing a financing statement

[2] A second intervening plaintiff, Arthur Stoltz, who sold the supermarket to Vernon, was also an additional insured under the lender's loss payable clause. Stoltz, however, is not a party to this appeal. As used in this opinion, "intervening plaintiff" refers to Bozzuto.

with the Secretary of State on January 24, 1973, pursuant to article 9 of the Uniform Commercial Code. General Statutes § 42a-9-302.

On February 12, 1982, Vernon, Bozzuto, Stoltz and Central entered into a stipulation for partial judgment which provided: (a) that Central would pay $130,000 in full and final satisfaction of its obligation under the policy and any endorsements thereto; (b) that such payment would be made to the attorneys for Vernon, Bozzuto and Stoltz, and they would deposit the same in an interest bearing account until all claims to the fund are resolved, by court proceedings or otherwise; (c) that Central would promptly cite in, as additional parties defendant, six creditors of Vernon, of whom Central had knowledge, for the purpose of enabling those creditors to assert their claims against the insurance proceeds; (d) that the case be withdrawn from the jury docket and assigned for trial or referred to a state referee at the earliest possible date; and (e) that each of the plaintiffs reserved its right to prove its entitlement to the proceeds paid by Central under the allegations of the complaint or intervening complaint, as the case may be. The stipulation was approved by the court and partial judgment was rendered according to its terms. Central cited in as party defendants five creditors of Vernon: the United States of America; the State of Connecticut; Pepsi Cola Bottling Company of Hartford-Springfield, Inc.; and Sapperstein, Hochberg & Haberman of Connecticut, Inc. All of those creditors had garnished Vernon's interest in the insurance proceeds.

All parties to the action thereafter filed motions for summary judgment.[3] The court held that Bozzuto had a direct right to the insurance proceeds pursuant to the

---

[3] The court granted the motions for summary judgment as to Bozzuto's, Inc., and Stoltz, but denied the motions as to all other parties because a material question of fact was left open regarding the priority of the creditors' claims in the remaining insurance proceeds.

policy with Central to the extent of its secured debt and that Bozzuto's right to that portion of the insurance proceeds became absolute at the time of the fire. The court stated that Bozzuto's right to those proceeds was not thereafter lost merely because Bozzuto failed to file a continuation statement pursuant to article 9 of the Uniform Commercial Code; General Statutes § 42a-9-403 (2); or its failure to sue Vernon directly. Accordingly, the court granted Bozzuto's motion for summary judgment and rendered judgment in its favor in the amount of $80,895.98 which represented the entire debt owed to it by Vernon. The court refused to award statutory interest as requested by Bozzuto, stating that there was not sufficient evidence of any wrongful retention of the proceeds to merit an award of interest. Bozzuto appealed claiming the court erred in not awarding such interest. Vernon cross appealed claiming that the court erred in granting Bozzuto's motion for summary judgment.

I

Bozzuto contends on appeal that the court erred in denying its request for statutory interest pursuant to General Statutes § 37-3a.[4] A determination of whether or not statutory interest is to be awarded as an element of damages " 'is one to be made in view of the demands of justice rather than through the application of any arbitrary rule.' " *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 275, 287 A.2d 374 (1971). "The real question in each case is whether the detention of the money is or is not wrongful under the circumstances." Id.; see *Marcus* v. *Marcus,* 175 Conn. 138, 146, 394 A.2d 727 (1978).

---

[4] General Statutes § 37-3a provides in pertinent part: "interest at the rate of eight per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable . . . ."

The trial court concluded that there were not sufficient facts adduced during the summary judgment proceedings upon which to base a conclusion that there had been a wrongful detention of the proceeds or that the interests of justice demanded such an award. As evidence of wrongful detention of the proceeds by Central, Bozzuto maintains that implicit in the court's ruling that Bozzuto had a direct right to payment is the conclusion that the retention of the money was wrongful. Bozzuto also alleges that merely because Vernon continually asserted that it had a prior right to the insurance proceeds, Central was not thereby excused from paying its just debts directly to Bozzuto when those debts became due. There is, however, no evidence before us concerning Central's reasons or motivations in delaying payment. Furthermore, the court stated that because Central, Vernon, Stoltz and Bozzuto entered a stipulation agreement, it could not determine whether or not the original detention of the proceeds was wrongful.

The allowance of interest is primarily an equitable determination to be made within the discretion of the trial court. *State* v. *Stengel,* 192 Conn. 484, 487, 472 A.2d 350 (1984); *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 406, 363 A.2d 160 (1975). Thus, the court's decision to deny an award of statutory interest can be reversed only upon a clear showing of an abuse of discretion. The Supreme Court has never held the denial of such an award to be an abuse of discretion. *State* v. *Stengel,* supra. We do not find an abuse of discretion in the court's determination not to award statutory interest in this matter.

## II

The plaintiff Vernon claims on cross appeal that the court erred in granting Bozzuto's motion for summary judgment. Vernon claims that because Bozzuto never

instituted suit against it directly prior to the running of the six year statute of limitations; General Statutes § 52-576; the debtor-creditor relationship between Bozzuto and Vernon, which formed the underlying basis of Bozzuto's right to the insurance proceeds, was terminated. Vernon claims that Bozzuto was therefore barred from claiming direct payment of the proceeds to the extent of the underlying debt. We do not agree.

The running of the statute of limitations only terminated the right to bring suit against Vernon. It did not have the effect of extinguishing the underlying debtor-creditor relationship as the plaintiff alleges. A debtor-creditor relationship existed between these parties at the time of the fire loss. The insurance policy provided a loss payable clause for the benefit of Bozzuto which was in effect at the time of the fire, and Bozzuto sought to collect directly from the defendant insurer. The fact that the applicable statute of limitations has run precluding a suit against Vernon does not foreclose the other avenues of recovery open to Bozzuto.

It is clear that because there was a standard mortgage loss payable clause naming Bozzuto as loss payee, it was the intention of the parties that the contract should be, at least in part, for the benefit of Bozzuto. The intervening plaintiff was a creditor of Vernon as evidenced by the security agreement. In the event of a loss covered by the policy, Bozzuto was entitled, pursuant to the lender's loss payable clause, to receive payment from the available proceeds to the extent of its security interest at the time of the loss. That payment would, at least in part, satisfy the duty which Vernon owed Bozzuto to pay the underlying debt. Bozzuto, therefore, was a creditor beneficiary of the policy. See *Pavano* v. *Western National Ins. Co.*, 139 Conn. 645, 648–49, 96 A.2d 470 (1953). It is clear from the intention of the parties, as evidenced by the existence of the loss payable clause, that Central was to owe a direct

obligation to Bozzuto under the policy. Bozzuto, therefore, as a third party beneficiary, had a right to sue Central directly on the contract. Id., 649. This right was not extinguished by the running of the applicable six year statute of limitations governing an action against Vernon by Bozzuto.

Vernon further claims that the court erred in granting Bozzuto's motion for summary judgment because by failing to file a continuation financing statement, pursuant to article 9 of the Uniform Commercial Code; General Statutes § 42a-9-403 (2); which became due at a point in time after the fire, Bozzuto lost its priority status as a holder of a perfected security interest thereby relegating its security interest unperfected as to other creditors.

As a creditor of Vernon, Bozzuto entered into a security agreement with Vernon on January 3, 1973, and thereafter filed a financing statement pursuant to General Statutes § 42a-9-302 covering Vernon's inventory and proceeds thereby perfecting its interest in the collateral. Bozzuto never filed anything further concerning that agreement.

In essence, Vernon is asserting that in order to collect proceeds to the extent of the underlying debt pursuant to the loss payable clause, the creditor must establish a priority interest in the proceeds in accord with the provisions of article 9 of the Uniform Commercial Code. We do not agree. We find no such nexus between the requirements of article 9 of the Uniform Commercial Code as adopted in our General Statutes and the rights recognized at law stemming from the existence of a standard mortgage loss payable clause in an insurance policy.

In the absence of a loss payable clause, the priorities of all creditors would be highly relevant and would determine the rights of these creditors to the insurance

proceeds. See *PPG Industries, Inc.* v. *Hartford Fire Ins. Co.,* 531 F.2d 58, 59 (2d Cir. 1976) (discussing priority in insurance proceeds where no loss payee provision in policy). In this case, the insurance policy incorporated a lender's loss payable clause which provided: "Loss, if any, under this policy shall be payable to Bozzuto's Inc. and Arthur Stoltz . . . as lender, mortgagee or trustee, as interest shall appear." This provision clearly entitled Bozzuto to a direct payment by the insurer from the insurance proceeds payable due to the loss to the extent of the debt owed to it by Vernon. The security agreement in existence at the time of the fire loss evidences the debt, but collection directly from Central pursuant to the lender's loss payable clause is not dependent upon a continued perfected priority security interest. In *Burritt Mutual Savings Bank* v. *Transamerica Ins. Co.,* 180 Conn. 71, 75, 428 A.2d 333 (1980), the court recognized that where a standard mortgage loss payable clause was involved, the cause of action by the loss payee directly against the insurer is based upon the "rights emanating from the multiperil insurance policy." The court made it clear that a cause of action based upon the rights of the parties pursuant to the contract was separate and distinct from a suit on the negotiable instrument involved in that case. Id.

This is an integral element of the analysis in such cases for it emphasizes the distinction between the rights and obligations in a suit directed against the insurer and the rights and obligations in a suit instituted against the debtor. In this case, Bozzuto's action is against the insurer, Central, and because it is clear that Bozzuto, as a creditor beneficiary, has a direct claim against Central, we need not look beyond the insurance contract as requested by the plaintiff Vernon. The trial court found that, at the time of the loss, Vernon was indebted to Bozzuto in the amount of

$80,895.98. The proceeds from the policy pursuant to the stipulation amounted to $130,000. The court did not err in concluding that Bozzuto had a direct right to the full amount of Vernon's indebtedness from those proceeds.

There is no error.

In this opinion the other judges concurred.

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).