MEMORANDUM OF DECISION
The instant case requires that the court determine the legal effect of certain language contained in a "Motor Vehicle Lease Open-End Purchase Option Rider" executed on July 19, 1988 by the plaintiff Francis T. Zappone Co. and the defendant Essex Leasing, Inc. (Essex). Subsequent to the initiation of the suit, the plaintiff added Liberty Bank (Liberty) as a party-defendant for CT Page 1865 the reason that Liberty is holding the title to the motor vehicle in question.
On December 4, 1992, when this case was tried, Essex failed to appear and was defaulted as to the complaint and non-suited as to the counterclaim it had brought against the plaintiff. In addition, Essex was also defaulted on a cross-complaint brought against it by Liberty. The trial proceeded between the plaintiff and Liberty and as a hearing in damages as to Essex.
 I.
From the evidence presented, the court finds that the following facts were established. A few months prior to July of 1988, the plaintiff, a large real estate firm in Waterbury, hired Brian McDonald as its general manager. In July of 1988, the plaintiff decided to lease a car for McDonald's business and personal use. McDonald selected a 1982 Mercedes owned by Essex and presented the plaintiff with a motor vehicle lease and a second document entitled "Motor Vehicle Lease Open-End Purchase Option Rider."
The lease provided for a term of 58 months with payments of $460.89 including simple interest per month and a like number of payments of $34.56 per month for the Connecticut sales and use tax. Some of the clauses in the rider are set forth below:
 1. Lessee may terminate the lease at anytime, so long as Lessee is not in default under the lease or this Rider, provided at the same time Lessee exercises the purchase option and pays the amount specified in Paragraph 2 below.
 2. At the end of the lease or its sooner termination as provided in Paragraph 1 above, Lessee shall have the option to purchase the Vehicle or require Lessor to sell it to Lessee's designee in its condition and at its location at such time. If Lessee exercises the said option, the price payable by Lessee in cash shall be the total of Seventeen Thousand Five Hundred plus all rentals and other charges then past due and also the full amount of future rentals for the balance, if CT Page 1866 any, of the entire term stated in the lease, less such part of said future rentals as may be allocated in the lease or on Lessor's records to the cost of insurance, if Lessor provides insurance.
 5. If Lessee . . . does not exercise the option provided above, Lessee shall pay to Lessor at the time of . . . failure to exercise the option all sums as calculated and determined under Paragraph 2 above, subject to the following (i) at that time Lessee shall return the Vehicle to Lessor. . . .
 7. Lessee acknowledges that Lessor's rights but not obligations under the lease as supplemented in this Rider are being contemporaneously assigned to Liberty Bank for Savings Middletown, CT ("Assignee") which has a purchase money security interest in the Vehicle and lessee. Accordingly, Lessee agrees to give Assignee copies of all notices to Lessor and to pay Assignee the option price plus all rentals and other charges payable by Lessee under the lease or this Rider. Upon payment of all such sums and performance of all obligations, the security interest of Assignee will be satisfied. Lessee agrees not to assert against Assignee or any other assignee any defense, set-off or counterclaim that it may have under the lease as supplemented by this Rider or otherwise with respect to the Vehicle but will assert same only against Lessor [if such claim exists].
When the lease and rider were presented, both documents provided for guarantees by Francis T. Zappone, the plaintiff's president. Mr. Zappone declined to guarantee the obligation personally and also notified Essex that the plaintiff wanted an option clause which, if exercised, would terminate the lease and all obligations thereunder.
In response to Mr. Zappone's concerns, Essex returned the lease and rider with the personal guarantees eliminated and with the following language added to the rider. CT Page 1867
 **Rep. Article #2 and #7: The note on the lease is a simple interest note* no future interest is charged and no future rentals are charged, if the Lessee exercises the option before the termination date.
 *Said note shall be of principal balance of $30,697.00, shall bear simple interest at 10.25 per cent, and shall he self liquidating over a period of five years.
Upon receipt of the revised documents, Francis T. Zappone executed them on behalf of the plaintiff. He testified that his understanding of the language inserted into the rider was that the plaintiff had the right to exercise the option and to purchase the vehicle at any time before termination of the lease for the sum of $17,500.00.
The word "note" in the inserted language referred to an obligation of Essex to Liberty. The plaintiff, in the person of Zappone, was aware that Essex was borrowing money and described the note as a "collateral assignment" based on the lease. Kathleen Chadd from Liberty's Loan Workout Department more aptly described the motor vehicle lease and rider executed by the plaintiff and Essex to be security for the borrower-lender relationship that Essex had with Liberty.
According to Miss Chadd if the plaintiff made all fifty-eight monthly payments reserved in the lease, the buyout figure for the vehicle and the principal amount of the loan would be $17,500.00. And, if at the end of fifty-eight months the buyout provision were not exercised, the vehicle would be returned to Essex with a value that hopefully equaled the principal balance of the loan. In this case where the plaintiff had made payments for several years the principal balance on the loan from Liberty to Essex approximated $19,021.35.[2]
Brian McDonald left the plaintiff's employment in June of 1990. Shortly thereafter, the plaintiff, on July 18, 1990, notified Essex of its exercise of the option to purchase the vehicle for $17,500. After several letters from the plaintiff, Essex responded that as of September 7, 1990, the payoff figure for the vehicle was $27,461.80 and $7.66 for each day thereafter. In the interim, Liberty, in August, 1990 sent a reminder of CT Page 1868 payment due and received notice from the plaintiff that the option had been exercised. Because of the dispute as to the payoff figure, the plaintiff has continued its monthly payments.
When a loan is approved the original documents pertaining to it are received by Liberty before money is transferred. The lease and the rider with the additional language as executed by the plaintiff and Essex were on file at Liberty before it delivered its check to Essex. Liberty, however, had not see the original lease and rider before they were signed.
 II.
At the outset, the court is confronted with two preliminary issues that have been raised by the parties. The plaintiff seemingly contends that Liberty, not being a party to the lease and rider, has no standing to argue their interpretation. Liberty maintains that the plaintiff did not properly exercise the option to purchase.
The first issue is placed in perspective by a few additional findings. On the upper right side of both the lease and the rider is the notation that "This contract is assigned to Liberty Bank for Savings, 315 Main Street, Middletown, CT 06457." The above-quoted paragraph 7 of the rider contains the plaintiff's acknowledgment of Liberty's purchase money security interest in the vehicle and lease. Pursuant to paragraph 7 and a formal notice of assignment sent by Essex later the plaintiff made its monthly payments to Liberty. It necessarily follows that Liberty is a third party beneficiary entitled to enforce the lease and rider. Pavano v. Western National Ins. Co., 139 Conn. 645, 648-49
(1953); Vernon Foodliner, Inc. v. Central Mutual Ins. Co., 1 Conn. App. 595,601-02 (1984).
The method by which an option is to be exercised is determined by the terms of the contract and there can be no unilateral unagreed-to deviation. Cavallo v. Lewis, 1 Conn. App. 519,520 (1984). Liberty claims that the proper method is set forth in paragraph 1 of the rider, namely in the wordage "Lessee may terminate this lease at any time . . . provided at the same time Lessee exercises the purchase option and pays the amount specified in paragraph 2 below." Paragraph 1, however, deals with a future termination of the lease as a substantive fact. In the court's view, the procedure by which the option is to be exercised is contained in paragraph 4 of the rider which reads "Lessee shall CT Page 1869 exercise the aforesaid option by mailing or delivering a notice in writing to be received by Lessor not less than 15 days before the end of the lease term or the date of such earlier termination." From the evidence, the court finds that the plaintiff sent the appropriate notice to Essex and a copy to Liberty.
 III.
The issue that is all-important in the case is, of course, whether the lease and the rider, including the language inserted into the latter document, amounted to a contract whereby the plaintiff could purchase the vehicle at any time for $17,500.00. A resolution of this question should start with some established rules of construction.
A contract must be interpreted according to the terms used in the document. A court has no power to create a new or different agreement for the parties. Jay Realty, Inc. v. Ahearn Development Corporation, 189 Conn. 52, 55 (1983); Slifkin v. Condec Corporation, 13 Conn. App. 538, 545 (1988). A contract should be construed as a whole and all relevant provisions should be considered together. Barnard v. Barnard, 214 Conn. 99, 109
(1990). A contract must be construed to effectuate the intent of the parties thereto. Sturman v. Socha, 191 Conn. 1, 10 (1983). The intention of the parties is to be ascertained from the language used interpreted in the light of the parties' situation and the circumstances connected with the transaction. Id., Solomon v. Hall-Brooke Foundation, Inc., 30 Conn. App. 136, 145
(1993). If an ambiguity exists in a contract between typed and printed words, the rule that gives primacy to typed matter should take precedence over the rule that says a contract will be construed against its author. A. Dubreiul Sons, Inc. v. Lisbon,215 Conn. 604, 613 (1990).
An application of all of the rules of construction leads to a rejection of the interpretation of the lease and rider urged by the plaintiff. In determining the parties' intent, the court is supposed to consider not only the language of the contract but also the circumstances surrounding its making, the motives of the parties and the purposes that they sought to accomplish. Barnard v. Barnard, supra at 109-110. One is tempted to ask a rhetorical question. Why would Essex, as lessor, agree to sell the vehicle for $17,500.00 when the debt of Essex to be secured by the lease and mentioned in the rider to the same document was $30,697.00?[3]
CT Page 1870
Moreover, the court concludes that the plaintiff's interpretation of the lease and rider is contradicted by the type-written description of the note for $30,697.00[4] as "self-liquidating." A dictionary definition of "self-liquidating" is something that produces a return equal to the sum invested to create or maintain it. A reading of the lease and rider demonstrates that the contemplated return was to be the payments from the plaintiff.
 IV.
The plaintiff's sole purpose in adding Liberty as a defendant was to obtain the certificate of title to the vehicle presently in the name of Essex and in the physical possession of Liberty. As determined by the court, however, the plaintiff is not entitled to the title until it purchases the vehicle by paying Liberty $17,500.00 plus the balance owed as specified in the lease.
When read with other documentary language in the rider, the typewritten insertion is simply a statement that after paying the amount required for termination, the plaintiff will owe no further sums. Even if the lease and rider when read together could be considered to constitute a contract susceptible to two interpretations, the construction advocated by Liberty and adopted by the court is the more reasonable and rational one and hence is to be preferred. Lanna v. Greene, 175 Conn. 453, 458 (1978); Game-A-Tron Corporation v. Gordon, 2 Conn. App. 692, 694 (1984).
Judgment is rendered in favor of Liberty. As to Essex, the plaintiff is entitled to judgment in the amount of $1.00 as nominal damages. DeBlasio v. Aetna Life Casualty Co., 186 Conn. 398,402 (1982); Cardona v. Valentin, 160 Conn. 18, 26 (1970).
BARNETT, J.