[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this declaratory judgment action, the plaintiff Pequot seeks a determination of certain rights and obligations under a lease between the parties. Pequot seeks a determination that under the lease 1) the defendant Doris Brunelle is entitled to rent as computed under a formula set forth in the lease, 2) Doris Brunelle is not entitled to a minimum rent and 3) if Pequot's sales are zero, no rent is due to Doris Brunelle. The court determines that the answer to these three requests is yes. CT Page 4010-OOOOO
Under C.G.S. § 52-29 and P.B. § 388 et seq., an action for declaratory judgment is available when there is an issue in dispute or uncertainty of legal relations requiring settlement between the parties. The Supreme Court has stated that this "means no more than that there must appear a sufficient practical need for the determination of the matter." Larkin v.Bontatibus, 145 Conn. 570, 575 (1958). Here there is such a need. The evidence has shown that the parties require this determination of their legal relations and rights to guide their actions in the future within lawful bounds.
A necessary preliminary finding is that required under P.B. § 390(d). Rich-Taubman Associates v. Harwyn Stamford, Inc.,35 Conn. App. 296, 299 (1994). That rule provides that a court will not render declaratory judgments upon the complaint of any person "unless all persons having an interest in the subject matter of the complaint are parties to the action or have reasonable notice thereof." The court finds in this case that all CT Page 4011 persons with such an interest are parties to the action.
Facts and Procedural Background
Much of the pertinent facts are undisputed. Pequot is a closely held corporation in Glastonbury, Connecticut which bottles and sells spring water. Doris Brunelle owns the real property at Spring Street Extension in Glastonbury from which the spring flows and the Pequot business operates. Doris Brunelle was the former majority stock holder of Pequot.[1] Pequot's current officers and shareholders are Philip Feltman, President, Martin Winer, Vice-president and Steven Feltman, Vice-President. On September 14, 1990, Doris Brunelle, by quit claim deed conveyed her interest in the Spring Street property to Doris Brunelle, Trustee. On the same date, Doris Brunelle assigned her rights, title and interest in the lease to Doris Brunelle, Trustee.
 a.
The lease between the parties was originally signed on July 1, 1980, with a seven year term, and provided for rent to be paid by Pequot for seven years at $12,000 a year, in monthly installments of $1,000. (Ex. 2, ¶ 3). Under ¶ 4 of the lease, Brunelle agreed to divest herself of the majority interest of issued and outstanding stock of Pequot before the end of the seven year lease term. Upon the date of that event, the lease would be extended for an additional twenty five years.
Paragraph 5 of the lease is entitled "Rental During Extended Term" and provides for Pequot to pay Brunelle as annual rent:
 a sum equal to six (6%) percent of the first FIVE HUNDRED THOUSAND ($500,000) DOLLARS of Lessee's annual gross sales plus, if applicable, a sum equal to five (5%) percent of the next TWO HUNDRED THOUSAND ($200,000) DOLLARS of Lessee's annual gross sales, plus, if applicable, a sum equal to four (4%) percent of the next THREE HUNDRED THOUSAND ($300,000) DOLLARS of Lessee's gross sales plus, if applicable a sum equal to Three (3%) percent of the next FIVE HUNDRED THOUSAND ($500,000) DOLLARS of Lessee's gross sales, plus, if applicable, a sum equal to Four (4%) percent of the Lessee's gross sales in excess of ONE MILLION FIVE HUNDRED THOUSAND ($1,500,000.00) DOLLARS
CT Page 4012
Paragraph 5 also provides for semiannual computation of the rent and payment by Pequot within ten days thereafter.
Paragraph 11 of the lease provides for payment of taxes and assessments by Pequot throughout the term of the lease. Paragraph 16 of the lease provides that Pequot will carry public liability insurance, fire, water damage and extended insurance and business interruption insurance.
 b.
In June 1984, before the end of the initial lease term, Doris Brunelle divested herself of the majority interest in Pequot stock. Accordingly, as of June 30, 1984, the extended term referenced in ¶ 4 of the original lease began. On June 29, 1984, Pequot and Brunelle entered into an amendment to the lease. (Ex. 3). Paragraph 1 of that amendment sets forth the agreement that the rent due to Brunelle shall be determined pursuant to ¶ 5 of the original lease.
Paragraph 2(a) of this amendment is the crucial provision at issue in this action. It reads
 Commencing on July 1, 1984, Lessee shall pay to the Lessor the sum of FOUR THOUSAND AND NO DOLLARS ($4,000) on or before the tenth (10th) day of each calendar month, to be applied against the amount of rent due Lessor pursuant to Paragraph 5 of the Lease.
[Italics added]
Paragraph 2(e) of this amendment provides for an adjustment each year beginning June 30, 1985, of the monthly payments set forth in ¶ 2(a) for those payments to be based upon the computation of the previous year's actual gross sales.
On June 30, 1984, the parties entered into a second amendment to the lease. (Ex. 4). Paragraph 1 of this amendment amends the original lease to require an annual rather than semiannual adjustment of the rent based on actual sales to insure that the rent paid by Pequot to Doris Brunelle over the previous twelve month period shall equal the rent actually due Doris Brunelle for that period, pursuant to ¶ 5 of the original lease. It includes the following language: "In the event that the amount of CT Page 4013 rent paid by Lessee exceeds the rent due Lessor for said period, then Lessee shall deduct from its next monthly rental payment the amount of excess payment. . .".
 c.
Pequot's present officers, Philip Feltman, Steven Feltman and Martin Winer, wish to sell the business to Belmont Springs Water Co. without assigning the subject lease to the buyer. (Ex. 5). In order to effectuate this sale, Pequot claims that a determination of the rights and obligations as to the rent provision of the lease is required. It is Pequot's position that under ¶ 2(a) of Ex. 3, Pequot will pay no rent if it sells its business to a third party.
 d.
Brunelle counters Pequot's claims arguing that she is guaranteed a minimum monthly rental on $4,000 and that Pequot is obligated to bottle and sell water from the premises throughout the entire twenty five year extended term of the lease. Brunelle specifically pleaded as defenses fraud, estoppel and mistake. At the eve of trial and over objection, Brunelle sought an amendment of her defenses to add mistake and to amend her promissory estoppel defense to estoppel. The court considered the evidence in light of those amended defenses and accordingly allowed the amendments.
This court determined during trial that the lease was integrated[2] as to the agreement regarding rent and accordingly ruled that any parol evidence offered by the defendant to support the above arguments would be considered only as to fraud, mistake or a separate agreement as to a third party sale.
Discussion
In determining the intent of the parties as to the rent issue and as to the three questions raised by the plaintiff Pequot the court first looks at the language of the lease and its amendments. Levine v. Massey, 232 Conn. 272, 278 (1995) ("lt is the general rule that a contract is to be interpreted according to the intent expressed in its language and not by an intent the court may believe existed in the minds of the parties.") In determining that the lease is the final expression of the intent CT Page 4014 of the parties on this issue the court considered whether the lease was integrated on this issue. "A written agreement is `integrated' and operates to exclude evidence of the `alleged extrinsic negotiation' if the subject matter of the latter `is mentioned, covered or dealt with in the writing'" AssociatedCatalog Merchandisers, Inc. v. Chagnon, 210 Conn. 734, 740
(1989).
The issue of the payment of rent was extensively covered in the lease. Those provisions set forth a monthly rent during the extended twenty five year term of $4000 to be applied against the rent as calculated under the percentage formula in ¶ 5 of the original lease. The rent is not characterized as either guaranteed or minimum. The rent is solely dependent upon the gross sales of Pequot.
The defendant Brunelle asks the court to consider evidence outside the four corners of these documents to find that in fact there was a guaranteed minimum rent owed to Brunelle through the extended term of the lease. In light of the court's above finding that these documents are integrated on this issue, it will consider such parol evidence only if it is relevant to the claims of fraud, estoppel or mistake. Heyman Associates No. 1 v.Insurance Co. of Penn., 231 Conn. 756, 780 (1995).
 Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant "(1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud." Jay Realty, Inc. v. Ahearn Development Corporation, 189 Conn. 52, 56, 453 A.2d 771 (1983).
231 Conn. At 780-781.
As alleged in her special defenses, the defendant Brunelle claims that Pequot's agents made representations contrary to the CT Page 4015 express terms of ¶ 2(e) so that it is estopped from maintaining its interpretation or it committed fraud in making these representations. In addition, Brunelle asserts a claim that the intent of the parties was not accurately expressed in the lease by mistake. The parol evidence offered by the defendant is considered in light of all these claims.
Over several days of trial, the court heard testimony from Philip Feltman, Doris Brunelle, Steven Feltman, Martin Winer, David Hill, Shirley Dimock and Joseph Campise.[3] Philip Feltman has been the president of Pequot since 1984 and its major shareholder since Mrs. Brunelle divested ownership. He first became involved with Pequot as a director in 1980. Steven Feltman is the son of Philip and he and Martin Winer were first employed by Mrs. Brunelle to work for Pequot. David Hill represents the Belmont Spring Water Co. Shirley Dimock has been a Pequot employee for twenty years and was hired by Mrs. Brunelle. Joseph Campise has been Pequot's accountant since 1966 and from 1966 to 1994 he was Mrs. Brunelle's accountant. In addition to the testimony of these witnesses the court reviewed documents concerning the 1980 and 1984 transactions, the plaintiff's financial statements including tax returns, various letters and memoranda regarding the proposed sale of Pequot to Belmont.
In light of the applicable law, pleadings and evidence the court makes the following additional findings. Under the first lease between the parties, the rent was fixed. (Ex. 2). During that period, Mrs. Brunelle was President of Pequot. In 1984, when Mrs. Brunelle completely divested herself of Pequot, the amendments to the lease provided for rent solely based upon the gross sales of the company and for annual adjustments based upon actual sales, up or down. (Ex. 3: ¶ 2(a) and (e); Ex. 4). It did not provide for a minimum guaranteed rent, nor for any restriction on Pequot from selling its business to a third party. (Ex. 2, 3 and 4). The 1984 amendment also provided for termination by the lessor after one full year of continuous and uninterrupted nonoperation and cessation of business operations at the premises. (Ex. 3 ¶ 4).
The defendant claims that certain representations made to her by various officers and individuals amounted to fraud. She testified to three misrepresentations leading up to and occurring at the 1984 transaction divesting her of ownership and amending the lease. She recalls Philip Feltman telling her "You will get your minimum guaranteed monthly rental of four thousand dollars" CT Page 4016 and that "it will be in writing." She claims she relied on this statement in proceeding with the transactions. She described Philip Feltman as a director and advisor of Pequot from 1980 to 1984. Philip Feltman testified that he had never told her that she would be guaranteed a minimum rent throughout the extended term of the lease.
Mrs. Brunelle then testified that during meetings prior to the 1984 transaction she asked Philip Feltman, Steven Feltman, Joseph Campise, Martin Winer and Martin Fierberg[4] about the possible sale of Pequot to a third party and its effect on her rights under the lease. She testified that she was told by one of them[5] that a new buyer would "inherit the terms of the lease." She stated that she told them she wanted to see it in writing. She also testified that she was told by this group that the spring could not be separated from the business.
Finally, at the closing, Mrs. Brunelle testified she asked to see her "monthly guarantee" and that Mr. Fierberg showed her ¶ 2 of Ex. 3. As with all of these alleged representations Mrs. Brunelle told the court that she relied on them in going forward with the sale of the business and the signing of the amended lease.
To prove fraud, the defendant must show it by clear, precise and unequivocal evidence. Tyers v. Coma, 214 Conn. 8, 11 (1990).
 The essential elements of an action in fraud, as we have repeatedly held, are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury.
Miller v. Appleby, 183 Conn. 51, 54-55 (1981) (Citations omitted).
Similarly, there are two essential elements of estoppel:
 "`. . . [1] the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and [2] the other party must change its position in reliance on those facts, thereby incurring some CT Page 4017 injury. . . .'" (Citations omitted.) O'Sullivan v. Bergenty, 214 Conn. 641, 648, 573 A.2d 729 (1990). It is the burden of the party asserting a claim of estoppel to establish the existence of the elements essential to an estoppel; see Cleary v. Zoning Board, 153 Conn. 513, 518, 218 A.2d 523 (1966);
Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 699 (1991).
Applying the law as stated in Miller v. Appleby, supra, the court finds that the defendant has not proved the necessary elements to show fraud on the part of the plaintiff. Doris Brunelle's testimony was that in 1984 Philip Feltman, Martin Fierberg and Joseph Campise made representations on behalf of Pequot. While the court appreciates that more than ten years have passed since the negotiations, the evidence is simply not sufficient to find by clear, precise and unequivocal proof that these statements were known to be untrue when made or that they were falsely made a statements of fact. Mrs. Brunelle's recollection of these various representations have not convinced the court. For the same reasons, the defendant has not met her lesser burden to prove estoppel under Middlesex Mutual Assurancev. Walsh, supra. Mrs. Brunelle testified that throughout the negotiations she made it clear that she wanted assurances on these representations in writing. Despite the fact that she was an experienced business person and represented by counsel independent from Pequot at both the 1980 and 1984 closings, she did not obtain those "assurances in writing."
The court finds credible the testimony of Philip Feltman that in 1984 Pequot intended to stay in business throughout the term of the lease. Accordingly, the court finds that there was no intent to defraud the defendant on the issue of the possible sale of Pequot to a third party. As noted previously, the lease contains no provision regarding the sale of the assets of Pequot without an assignment of the lease. The parol evidence is insufficient to show anything more than a lack of contemplation or agreement on this issue.
As to the defendant's claim that the lease should have included a provision guaranteeing the minimum rent of $4,000, the court cannot find that the parties actually agreed to that but omitted it by mistake from the written documents. The defense of mistake alleged by the defendant Doris Brunelle relies upon proof that the lease does not document the actual agreement reached CT Page 4018 between the parties. "[M]utual mistake exists where both parties are mutually mistaken about the same material fact. Buol MachineCo. v. Buckens, 146 Conn. 639, 641, 153 A.2d 826 (1959)" DaintyRubbish Service, Inc. v. Beacon Hill Assoc., Inc., 32 Conn. App. 530,537 (1993). Here there is insufficient evidence that the parties agreed to a guaranteed rent provision that was omitted from lease by oversight.
The defendant also raises the issue of good faith and fair dealing as part of this action. However, the court does not find it pertinent to a resolution of the questions posed by the plaintiff. The issue before the court in this declaratory judgment action is whether the written lease documents the agreement between the parties in 1980 and 1984 or whether the lease was the result of fraud or mistake. "The issues in the present case are whether the written lease represents the parties' agreement and, if so, whether the contract was induced by fraud, not whether the plaintiffs exercised bad faith in discharging their contractual obligations." Neiditz v. HousingAuthority, 43 Conn. Sup. 283, 294 (1994), affirmed 231 Conn. 598
(1995) (per curiam). For the above reasons, Judge Holzberg would not consider the covenant of good faith and fair dealing in this case involving interpreting the terms of a written lease with defenses of fraud and mistake.[6] Similarly, this court will not go beyond the issues raised in the prayer for relief and special defenses. P.B. § 391. The court would note that the defendant has brought an action in the regular session of this judicial district alleging breach of contract and inter alia,
breach of the duty of good faith and fair dealing. Doris G.Brunelle, Trustee and Doris G. Brunelle v. The Pequot SpringWater Co., et al, Doc. No. CV 95-0551316S. See Leoni v. WaterPollution Control Authority, 21 Conn. App. 77, 83 (1990).
To the extent that the defendant now claims an affirmative defense of breach of fiduciary duty, the court will not consider it. It was not alleged in the pleadings. See Pergament v. Green,32 Conn. App. 644, 654, cert. denied, 228 Conn. 903 (1993) ("Because the trial court based its judgment on breach of fiduciary duty, a matter not pleaded by the plaintiff, we reverse the judgment and remand the case for a new trial"); OaklandHeights Mobile Park, Inc. v. Simon, 36 Conn. App. 432, 436
(1994).[7]
Accordingly, after consideration of the evidence and applicable law, the court determines: CT Page 4019
1. The calculation of rent due to Doris G. Brunelle and/or Doris G. Brunelle Trustee from Pequot Spring Water Company is to be computed according to the formula set forth in Paragraph Five of the original lease (Exhibit 2);
2. The lease (Exhibits 2, 3 and 4) does not provide for a minimum rent to be paid to Doris Brunelle by Pequot; and
3. The lease documents do not prohibit Pequot from selling its business, thereby reducing its gross sales to zero so that no rent would be due to Doris Brunelle.
Judgment may enter accordingly. No costs to taxed.
Alexandra Davis DiPentima, Judge