**ORANGE IMPROVEMENTS PARTNERSHIP,**
Plaintiff,

v.

**CARDO, INC., Defendant.**

**No. 3:97 CV 661(GLG).**

United States District Court,
D. Connecticut.

May 15, 1998.

John K. Atticks, III, Snow, Atticks & Hollo, LLC, Madison, CT, for Plaintiff.

John J.L. Chobor, Greenberg, Hurwitz, Cooper & Silverman, P.C., New Haven, CT, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GOETTEL, District Judge.

Plaintiff, Orange Improvements Partnership, owns a shopping center in Orange, Connecticut known as the Orange Promenade Center (the "Center"). Orange Improvements leases a portion of the Center to defendant, Cardo, Inc., in which Cardo has operated a package and liquor store for over thirty years. Cardo originally entered into a lease agreement in 1965 (the "1965 Lease") with Orange Improvements' predecessor, Whiteacre–Orange Associates. Since the 1965 Lease, the Center's ownership changed hands twice until Orange Improvements assumed ownership on April 30, 1993. When Orange Improvements became the Center's owner, it obtained all of its predecessors' rights, duties, and obligations under the Center's lease agreements. Orange Improvements currently employs DLC Management Corporation to manage the Center.

Under the terms of the 1965 Lease, Cardo paid an annual base rent of $7,584.00, payable in equal monthly installments of $632.00, for approximately 2528 square feet. *See* Pl.'s Ex. 1,[1] Arts. I & IV. While the 1965 Lease refers to this base rent as a "minimum rent," the term "minimum rent" is misleading because Cardo was also required to pay an additional rent based on a percentage of its gross sales. According to this overage provision, Cardo had to pay an amount equal to 5% of its total annual gross sales in excess of $250,000.00. During the period from 1993 to 1997 at issue in this case, Cardo's gross sales included receipts from liquor, lottery tickets, cigarettes, beer, and soda sales. *See* Pl.'s Ex. 6.

On February 25, 1967, the parties to the 1965 Lease modified the overage provision (the "1967 Letter"). The 1967 Letter, written by the then-president of Whiteacre–Orange, Sidney Goode, to the then-president of Cardo, Hyman Gluck, provides in part:

> It is true that I had promised you that Stop and Shop would carry no liquor or beer in the shopping center. However, their lease was signed before yours.
>
> In consideration of the fact that they are carrying beer, we will exclude beer and soda from overage percentage rent.

Pl.'s Ex. 4. Thus, the parties modified the overage provision to exclude beer and soda sales from Cardo's gross receipts for the purpose of calculating the amount of overage due. On April 21, 1976, the 1967 Letter was recorded consecutively with the 1965 Lease in the Orange Land Records in volume 255 at page 533 and volume 255 at page 506, respectively.

In anticipation of the Center's renovation, the 1965 Lease was modified again in 1990 ("1990 Lease Modification"), this time by Cardo and one of Whiteacre–Orange's successors, Orange White Acres, Inc. Pl.'s Ex. 3. During the construction period, the parties agreed that Cardo would be bound by the terms of the "Lease," except those provisions affecting rent, insurance, and the lease term. *Id.* § 4. The modified rent provision in effect during the construction period stated that the base rent would be suspended, but that additional percentage rent would continue to be payable "in accordance with said Lease." *Id.* § 4(a). When the construction period ended, the parties agreed to increase the amount of Cardo's annual base rent to $13,704.00, payable in equal monthly installments of $1142.00, because Cardo's square footage had increased from 2528 to 3140 square feet. *See id.* §§ 7(A) & (B). Finally, the parties agreed that "[a]ll of the terms and conditions of the Lease ... not ... modified and amended above shall remain in full force and effect as if restated herein in all of its parts...." *Id.* § 12.

The term at issue in this case is the definition of "lease" in the 1990 Lease Modification. "Lease" is defined as a certain lease agreement entered into on May 14, 1965

---

1. Even though the trial exhibits were marked as "Plaintiff's Exhibits," we note that the parties submitted the exhibits jointly, with the exception of Exhibit 7, upon which we did not rely in rendering these findings of fact and conclusions of law.

between Cardo and Whiteacre–Orange to lease approximately 2528 square feet of the Center. *Id.* at 1. Notably, the definition of "lease" does not refer to the 1967 Letter as having modified the 1965 Lease. The ambiguity of the term "lease" affects the parties' rights and duties regarding rent because plaintiff argues that the overage should include Cardo's beer and soda sales, whereas Cardo contends that the 1967 Letter excluded its beer and soda sales.

According to the 1965 Lease as modified by the 1967 Letter, Cardo was required to pay rent in two portions. The base rent was payable monthly in equal installments, and the additional percentage rent was payable annually based on 5% of Cardo's gross sales exceeding $250,000.00. To determine the amount of overage due, Cardo would generally write to the Center's owner in January and set forth its total sales figures for the previous calendar year. From the total sales figure, Cardo would subtract sales tax, the $250,000.00 threshold, and beer and soda sales. It would then add its sales from lottery tickets and cigarettes. Cardo calculated the overage based on 5% of the resulting figure. Ex. 6.[2] While Orange White Acres owned the Center from September 12, 1989 to April 29, 1993, it never requested overage on Cardo's beer and soda sales. After Orange Improvements acquired ownership on April 30, 1993, Cardo continued paying additional percentage rent according to the terms of the 1965 Lease as modified by the 1967 Letter, thus excluding its beer and soda sales from the overage calculation.

Orange Improvements asserts that it conducted a review of the Center's leases in the winter of 1996–97 at which time it determined that Cardo had not paid overage on its beer and soda sales. On February 26, 1997, Orange Improvements made a demand upon Cardo for $87,236.00, which represented the amount of past due additional percentage rent based on Cardo's receipts from beer and soda sales for the period from April 1993 to December 1996. Pl.'s Ex. 5.

Orange Improvements commenced this action on April 8, 1997, as amended on April 24, 1997, after Cardo did not pay the $87,236.00 bill. In its amended complaint, plaintiff seeks money damages, an accounting, reasonable attorney's fees in accordance with the lease, and other such relief as to which law or equity may pertain. Plaintiff subsequently moved for summary judgment, and we denied that motion because of the existence of issues of fact requiring a trial. (*See* this Court's decision of November 6, 1997, document # 23. The discussions of the facts and law contained therein are incorporated into these findings of fact and conclusions of law). After considering testimony given during a one-day bench trial, which was held on May 12, 1998, this Court makes the following additional findings of fact.

1. While negotiating the 1990 Lease Modification, Cardo did not discuss the 1967 Letter with Orange White Acres' then-president, Douglas Benach.

2. Cardo's former president, Hyman Gluck, testified that Cardo was not represented by counsel during the 1990 negotiations. At trial, however, defendant's current counsel indicated that a member of his firm had reviewed the 1990 Lease Modification before Gluck signed it.

3. In 1990, Cardo considered it necessary to modify the 1965 Lease because the package store would be relocated to temporary quarters for four months during the Center's renovation (as a result of which Cardo nego-

---

**2.** For example, a typical calculation would be as follows:

| | | | |
|---|---|---|---|
| Total Sales | $1,030,908.49 | Less: Sales Tax | 63,005.10 |
| Less: Beer and Soda | 512,227.45 | | 553,489.94 [sic] |
| | 518,681.04 | | |
| | | Less: Base | 250,000.00 |
| Add: | | | 303,489.40 |
| Lottery | 10,901.68 | | |
| Cigarettes | 86,911.78 | x5% | 5% |
| | 97,813.46 | AMOUNT DUE AND ENCLOSED | $ 15,174.47 |
| | 616,494.50 | | |

*See* Pl.'s Ex. 6 (setting forth overage due for the calendar year 1997).

tiated the discontinuation of the base rent while it was in the terıporary quarters), and because Cardo woulċ be paying a higher base rent when it moved into its new quarters due to an increase in the store's square footage.

4. Cardo did not regard the 1990 Lease Modification as affecting its overage payments, which it considered would continue to be payable on gross receipts excluding beer and soda.

5. Evidence established that beer (and, to a lesser extent, soda) amounted to about half of Cardo's gross sales and that beer has a very low profit margin (at times, Cardo sells beer at cost). Consequently, if Cardo were required to pay an overage on beer and soda sales, the amount of annual overage payments would more than double after deducting the $250,000.00 threshold.

6. No evidence was offered regarding Benach's state of mind, who apparently would have been available as a witness to either side, during the 1990 negotiations. However, based on the fact that Orange White Acres did not receive overages on beer and soda sales while it continued as the Center's owner during the two years and seven months after the 1990 Lease Modification, and considering that Orange White Acres conducted an audit covering at least the early part of that period without complaining about Cardo's failure to pay overages on beer and soda sales, we find that Orange White Acres did not intend the 1990 Lease Modification to eliminate the 1967 Letter's effect and to add beer and soda sales to Cardo's gross receipts for the purposes of calculating the additional percentage rent.

7. Before purchasing the Center, plaintiff conducted a due diligence search of the Center's records, and therefore is charged with constructive knowledge of the 1967 Letter because it was recorded in the Orange Land Records.

Plaintiff argues that this Court cannot consider the above additional findings of fact because such evidence purportedly varies the lease's written terms. Plaintiff correctly notes that parol evidence cannot generally be used if it would vary or contradict a contract's terms. *TIE Communications, Inc. v. Kopp,* 218 Conn. 281, 288, 589 A.2d 329, 333 (1991). Here, however, defendant offered parol evidence to explain the meaning of the ambiguous term "lease" as used in the 1990 Lease Modification. *Id.* at 288–89, 589 A.2d at 333 (stating that parol evidence is admissible for the purpose of explaining an ambiguity in a written instrument) (quoting *Jay Realty, Inc. v. Ahearn Dev. Corp.,* 189 Conn. 52, 56, 453 A.2d 771, 773 (1983)); *see Gendleman v. Mongillo,* 96 Conn. 541, 544, 114 A. 914, 917 (1921) (admitting parol evidence in a case involving a residential sales contract to explain the meaning of an essential term relating to a property's description). Despite the seeming clarity of the definition of "lease" in the 1990 Lease Modification, we find that it is an ambiguous term because the 1965 Lease had been modified by the 1967 Letter, and the definition does not state whether the modification which was made twenty-three years earlier would continue to apply. Thus, this Court finds that it was appropriate to consider parol evidence to determine the parties' intended meaning of the term "lease" as used during the 1990 negotiations. As mentioned in the fourth and sixth findings of fact, we conclude that the then-parties intended the term "lease" would mean the 1965 Lease as modified by the 1967 Letter.

Plaintiff also argues that even if the Center's prior owner, Orange White Acres, did not expect a greater rental and could not have made a claim for it, when Orange Improvements acquired the Center and assumed Cardo's lease, it was entitled to enforce the lease on its written terms. Plaintiff offers no authority to support this approach, other than to argue that the statute of frauds "precludes Defendant from relying on parol evidence to explain or modify the [1965 Lease] or [1990 Lease Modification]." Specifically, plaintiff contends that the acceptance and consideration of any parol evidence would entirely destroy the lease under the statute of frauds.

To the contrary, we find that the 1990 Lease Modification satisfies the statute of frauds, C.G.S.A. § 52–550, because it is in writing, signed by both parties, and contains

all the essential elements, including a description of the leased premises, the parties to the lease, the lease term, the rent amount, and the method for paying rent. *Montanaro v. Pandolfini*, 148 Conn. 153, 157, 168 A.2d 550, 552 (1961). We emphasize that the parol evidence discussed above is admissible because it was offered for the limited purpose of explaining an ambiguous term, and not to modify any terms of the lease. *See Kalosky v. City of Waterbury*, 1 Conn.App. 105, 108, 468 A.2d 1264, 1265–66 (1983) (admitting parol evidence to resolve the ambiguity of the phrase "shall be entitled to and shall receive a maximum disability pension of seventy-six percent of annual pay" and to determine the meaning of this phrase as understood by the parties when the collective bargaining agreement was entered into).

■ The foregoing constitutes this Court's findings of fact and conclusions of law. In sum, we find that the term "lease" as used in the 1990 Lease Modification is ambiguous because it does not state whether the 1967 Letter, which modified the 1965 Lease, would still govern the annual overage payments. We also find that during the 1990 negotiations, the then-parties intended that the 1967 Letter would continue to affect the overage calculation by excluding beer and soda sales from Cardo's gross receipts. After the 1990 Lease Modification, we find that the parties conducted themselves as if the 1967 Letter remained effective. Finally, we find that once plaintiff became the Center's owner in 1993, it was bound by the lease's terms as discussed above. Thus, defendant was not and is not required to pay overage on beer and soda sales. The Clerk of the Court is directed to enter judgment for the defendant.

**SO ORDERED.**