## EDWARD A. CURRIE *v.* LOUIS MARANO ET AL. (5627)

BORDEN, O'CONNELL and STOUGHTON, Js.

Argued January 6—decision released March 1, 1988

*William C. Franklin,* for the appellant (plaintiff).

*Richard Bruno,* for the appellees (defendants).

O'CONNELL, J. This is the plaintiff's appeal from a defendants' judgment in an action, tried to the court, for a real estate commission. The plaintiff claims that the trial court erred in concluding (1) that a real estate broker who earns a commission pursuant to an agreement that complies with General Statutes § 20-325a[1]

---

[1] "[General Statutes] Sec. 20-325a. ACTIONS TO RECOVER COMMISSIONS ARISING OUT OF REAL ESTATE TRANSACTIONS. (a) No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time he performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state,

must in addition demonstrate that the written agreement complies with General Statutes § 20-325b,[2] (2) that the statements of the named defendant did not constitute a judicial admission that the real estate commission at issue was due, (3) that the defendants were not equitably estopped from asserting the protection of General Statutes §§ 20-325a and 20-325b as a defense to the plaintiff's claim, and (4) that the defendants were not liable under the doctrine of unjust enrichment. We find no error.

The plaintiff was a licensed real estate broker in the full-time employ of the Uniroyal Corporation as a real

after October 1, 1971, to recover any commission, compensation or other payment in respect of any act done or service rendered by him, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter.

"(b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent.

"(c) The provisions of this section shall not apply to any person excepted from the provisions of this chapter by section 20-329 with respect to any acts performed by him which are included in such exception."

[2] "[General Statutes] Sec. 20-325b. CERTAIN REAL ESTATE AGREEMENTS TO CONTAIN NOTICE REGARDING COMMISSIONS. REQUIREMENTS. Each written agreement which fixes the compensation to be paid to a real estate broker for the sale of real property shall contain the following statement in not less than ten point boldface type or in a manner which otherwise stands out significantly from the text immediately preceding any provision of such agreement relating to compensation of the broker:

"NOTICE: THE AMOUNT OR RATE OF REAL ESTATE COMMISSION IS NOT FIXED BY LAW, THEY ARE SET BY EACH BROKER INDIVIDUALLY AND MAY BE NEGOTIABLE BETWEEN THE SELLER AND BROKER."

estate specialist. The defendants, two of whom were socially acquainted with the plaintiff, owned acreage situated partially in Middlebury and partially in Southbury. The defendants asked the plaintiff to seek a buyer for their property. After obtaining permission from Uniroyal, the plaintiff and the defendants discussed the matter in greater detail, the result of which was an exclusive listing agreement executed by all parties on November 30, 1981. This agreement set an asking price of $590,000 and a 10 percent commission for the plaintiff. The agreement, however, did not conform to General Statutes § 20-325b concerning notice as to the negotiability of an agent's commission. See footnote 2, supra. By its terms, this agreement expired on May 30, 1982, and as of that date the plaintiff's efforts had not produced a buyer, nor were they more successful during a purported oral six-month extension of the listing agreement.[3]

Sometime after the expiration of the "oral extension" the plaintiff learned of a prospect developed by another broker. Working in conjunction with the other broker, an option was signed on May 13, 1983. This option was ultimately exercised and a closing took place on March 28, 1985. In this option, the defendants acknowledged the services of the plaintiff and the cobroker as the sole brokers involved in the transaction. At the closing, the defendants, acting on advice of counsel, refused to pay the plaintiff any commission whatsoever, giving rise to this action.

The action was tried to the court on a four count amended complaint. The first count was in fraud; the second count alleged a breach of the listing agreement and the option; the third count was based on an offer

---

[3] We need not pass upon the trial court's apparent recognition of the validity of an oral extension of a written real estate agreement. General Statutes § 20-325a.

of compromise; and the fourth count alleged estoppel against the defendants from raising a defense of a flaw in the listing agreement.[4] Judgment was rendered for the defendants on all counts. We find no error.

## I

General Statutes § 20-325a (b) is dispositive of this appeal. This statute expressly prohibits the bringing of an action for a real estate commission unless the services were rendered pursuant to a written contract (i.e., a listing agreement). *Howland* v. *Schweir,* 7 Conn. App. 709, 713, 510 A.2d 215 (1986). The trial court specifically found that the plaintiff's efforts were unavailing during the original six-month term or in the six-month "oral extension." This finding is fatal to the plaintiff's case. When the plaintiff continued rendering services after the end of the agreement or the "extension" thereof, those services were performed "without the benefit of a proper listing agreement and were thus performed at his peril." Id., 715. Therefore, once the agreement expired, the plaintiff could not recover for any services rendered beyond that date.

## II

The plaintiff seeks to circumvent the real estate listing statute by arguing (1) that the defendants are equitably estopped from raising the defense of the plaintiff's noncompliance with General Statutes §§ 20-325a and 20-325b, and (2) that the court should impose liability on the defendants because they have been unjustly enriched by the plaintiff's services.

---

[4] The trial court found that there was no factual basis for the first count, alleging fraud, and that finding has not been appealed. The third count, alleging an offer of compromise, was voluntarily abandoned by the plaintiff at trial. The trial court's memorandum construed the fourth count as a claim for unjust enrichment stating: "Although the words are not used, the essence of this count is that by accepting the benefit of the plaintiff's work they will be unjustly enriched if they do not compensate him."

General Statutes § 20-325a has been strictly construed and enforced. *Thornton Real Estate* v. *Lobdell,* 184 Conn. 228, 230–31, 439 A.2d 964 (1981); *Howland* v. *Schweir,* supra. The scenario arising most commonly in cases of real estate commission claims, when there has not been compliance with the listing statute, as here, presents a fact pattern in which a real estate owner allegedly reaps the benefits of a broker's services without paying for them. To allow recovery on either of the plaintiff's legal theories in the present case would nullify § 20-325a and emasculate the state's real estate sales licensing system. See generally General Statutes §§ 20-311 through 20-329bb.

We find no merit in the plaintiff's claim that the defendant should be equitably estopped from asserting the defense of noncompliance with General Statutes § 20-325a. " 'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse.' " *Brock* v. *Cavanaugh,* 1 Conn. App. 138, 141–42, 468 A.2d 1242 (1984), quoting *Bozzi* v. *Bozzi,* 177 Conn. 232, 241, 413 A.2d 834 (1979). It is a long standing tenet of the law of equitable estoppel that a party requesting such relief cannot contribute to the hardship claimed, through his own ignorance of the essential facts of the matter in question. "There could be no duty resting upon [the defendant] to communicate facts to the plaintiff of which he was ignorant only by his own negligence. One setting up an estoppel *in pais,* is himself bound to the exercise of good faith and due diligence to know the truth." *Huntley* v. *Holt,* 58 Conn. 445, 450, 20 A. 469 (1890); 28 Am. Jur. 2d, Estoppel & Waiver § 80, and cases cited therein. This plaintiff, a licensed real estate

broker since 1958, should have been aware of the strict legal prerequisites to obtaining a broker's commission in a real estate sale as set forth in the laws governing such transactions. We cannot apply the doctrine of equitable estoppel in a case in which the party requesting the relief claims ignorance of the laws governing his profession, when such ignorance of the law is the primary cause of his need for such relief. Thus, we conclude that equitable estoppel does not apply in the present case.

The plaintiff attempts to support his unjust enrichment argument by drawing an analogy to the statute of frauds. General Statutes § 52-550a. This argument and the cases cited in support thereof, are of no aid to the plaintiff. The statute of frauds analogy has been specifically addressed and discredited by the Supreme Court in clear and unambiguous language: "[Real estate] listing contracts are governed *exclusively* by section 20-325a; such contracts do not fall within our statute of frauds." (Emphasis added.) *William Pitt, Inc.* v. *Taylor,* 186 Conn. 82, 84, 438 A.2d 1206 (1982).

Further, with regard to the plaintiff's claims for equitable relief, Justice Parskey, while on the Superior Court bench, analyzed a quantum meruit claim in a case in which a listing agreement proved faulty. *Good* v. *Paine Furniture Co.,* 35 Conn. Sup. 24, 27–28, 391 A.2d 741 (1978). Justice Parskey's search of the precedents from other jurisdictions led him to note that "statutes comparable to § 20-325a (b) which have been enacted in other jurisdictions have been strictly construed by the courts. Thus, licensed real estate brokers who have failed to produce evidence of written brokerage agreements which comply with statutes such as § 20-325a (b) have been precluded from recovering in quantum meruit. *Augustine* v. *Trucco,* 124 Cal. App. 2d 229, 237–38; *Peacock Realty Company* v. *E. Thomas*

*Crandall Farm, Inc.,* 108 R.I. 593, 596." *Good* v. *Paine Furniture Co.,* supra, 27–28. We agree with this analysis.

In view of the grounds of our disposition of this appeal, we do not reach the plaintiff's other claims of error.

There is no error.

In this opinion the other judges concurred.