REAL ESTATE AUCTIONS, INC., ET AL. *v.*
SUSAN A. SENIE ET AL.
(9567)
(10517)

NORCOTT, LAVERY and CRETELLA, Js.

Argued May 6—decision released August 11, 1992

*Margaret M. Dorsey,* for the appellants-appellees (plaintiffs).

*Creighton M. English,* for the appellees-appellants (defendants).

LAVERY, J. The plaintiffs, Real Estate Auctions, Inc. and Mortimer and Mortimer, seeking to recover a real estate commission from the defendants, appeal from the trial court's decision rendering summary judgment in favor of the defendants, Susan A. Senie and Leonard Rosenthal. On appeal, the plaintiffs claim that the trial court improperly granted the defendants' motion for summary judgment because (1) the defendants should have been precluded from raising defenses based on

the listing agreement under the doctrine of equitable estoppel, (2) the listing agreement was not defective because all of the documents, considered together, satisfied the requirements of General Statutes § 20-325a, (3) the plaintiffs asserted a quantum meruit claim, (4) judicial admissions should have precluded summary judgment, and (5) the trial court incorrectly ruled that the plaintiffs could not prevail on their Connecticut Unfair Trade Practices Act (CUTPA); General Statutes § 42-110a et seq.; claim due to their noncompliance with General Statutes § 20-325a. Additionally, the plaintiffs appeal from the trial court's denial of their motion to open the judgment and amend their complaint. In appeal no. 9567, the defendants challenge the trial court's prejudgment attachment order. These cases were presented together at oral argument and will be considered together in this opinion. Because we affirm the judgment of the trial court in granting the defendants' motion for summary judgment in appeal no. 10517, we need not reach the merits of the defendants' appeal because the prejudgment attachment must be dissolved upon the entry of final judgment for the defendants.

The following facts were presented to the trial court by way of the pleadings and documents accompanying the motion for summary judgment. On October 13, 1989, the plaintiff Real Estate Auctions, Inc., a real estate auctioneer and licensed real estate broker, entered into an "exclusive real estate auction agreement" with the defendants. The parties agreed that the Real Estate Auctions, Inc., in conjunction with a "cooperating realtor"[1] would find a buyer for property located at 57 Maple Avenue, Greenwich. The defendants were record owners of the property, and were licensed real estate brokers doing business as Maple

---

[1] Mortimer and Mortimer is the cooperating realtor called for in the agreement between Real Estate Auctions, Inc., and the defendants.

Avenue Associates. The defendants promised to pay Real Estate Auctions, Inc., a commission of 7 percent if the property were sold with the help of a cooperating realtor. On November 19, 1989, the property was sold at auction for $625,000, resulting in an alleged commission due of $43,750. The defendants refused to pay the commission, claiming they had been cheated out of a reasonable price for the property by the actions of the plaintiffs during the auction. The defendants testified that during frenzied bidding the plaintiffs pressured them to auction the property "without reservation," meaning that the defendants would be required to accept the highest bid, regardless of its amount. The defendants agreed to do so. Closing took place on April 23, 1990, at which time the defendants refused to pay the commission to the plaintiffs.

On July 5, 1990, the plaintiffs filed an application for a prejudgment remedy in Superior Court. After a two day hearing, the trial court ordered that the plaintiffs could attach $48,000 of real estate owned by the defendants. The defendants subsequently appealed the attachment order to this court in appeal no. 9567.

The parties closed the pleadings, and the defendants filed a motion for summary judgment. The motion for summary judgment was granted on May 24, 1991. The plaintiffs thereafter filed a motion to open the judgment in order to amend their complaint to include counts of fraud and misrepresentation. That motion was denied by the trial court, and the plaintiffs filed appeal no. 10517.

Summary judgment must be rendered if "the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384; *Cummings & Lockwood* v. *Gray,* 26 Conn. App. 293, 296–97, 600 A.2d

1040 (1991). "[T]he party opposing the motion [for summary judgment] must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . The mere presence of an alleged adverse claim is not sufficient to defeat a motion for summary judgment. . . . Rather, the [nonmoving party] must recite specific facts . . . which contradict those stated in the [moving party's] affidavits and documents. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . " (Internal quotation marks omitted.) *Farmington* v. *Dowling,* 26 Conn. App. 545, 549, 602 A.2d 1047, cert. granted on other grounds, 221 Conn. 921, 608 A.2d 687 (1992).

Despite the plaintiffs' multiple claims as to why the trial court improperly granted the defendants' motion for summary judgment, this case turns on the issue of whether the listing agreement complied with General Statutes § 20-325a (b), which sets out the requirements for maintaining a cause of action to recover a real estate commission.[2] We conclude that our Supreme Court's recent holding in *McCutcheon & Burr, Inc.* v. *Berman,* 218 Conn. 512, 590 A.2d 438 (1991), which rested upon similar facts, is controlling in the present case.

[2] General Statutes § 20-325a provides in relevant part: "ACTIONS TO RECOVER COMMISSIONS ARISING OUT OF REAL ESTATE TRANSACTIONS. . . . (b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent."

In their motion for summary judgment in this case, the defendants asserted a special defense that the listing agreement was invalid because it failed to state the "names and addresses of all the parties," and because it was not signed by one of the owners, Leonard Rosenthal.

"It is well established that the requirements of § 20-325a (b) are mandatory rather than permissive and that the statute is to be strictly construed. *New England Land Co.* v. *DeMarkey*, [213 Conn. 612, 569 A.2d 1098 (1990)] (listing agreement must include sale price of property); *Jay Realty, Inc.* v. *Ahearn Development Corporation*, 189 Conn. 52, 54, 453 A.2d 771 (1983) (listing agreement lacking addresses of both parties unenforceable); *Thornton Real Estate, Inc.* v. *Lobdell*, 184 Conn. 228, 230–31, 439 A.2d 946 (1981) (brokerage contract signed by owner's agent unenforceable under statute as then worded); *Hossan* v. *Hudiakoff*, 178 Conn. 381, 383, 423 A.2d 108 (1979) (failure to include broker's address fatal to listing agreement); *Rostenberg-Doern Co.* v. *Weiner*, 17 Conn. App. 294, 305–307, 552 A.2d 827 (1989) (omission of rate of broker's commission fatal); *Howland* v. *Schweir*, 7 Conn. App. 709, 713–15, 510 A.2d 215 (1986) (commission not recoverable where broker could not prove he produced a buyer during effective term of listing agreement); *Arruda Realty, Inc.* v. *Doyon*, 35 Conn. Sup. 617, 620, 401 A.2d 625, cert. denied, 176 Conn. 763, 394 A.2d 201 (1978) (owner's address requirement not satisfied even though the listing agreement included the address of the subject property, which was the same as the owner's address)." *McCutcheon & Burr, Inc.* v. *Berman,* supra, 520. "A broker who does not follow the mandate of [§ 20-325a (b)] does so at his peril." *Thornton Real Estate, Inc.* v. *Lobdell,* supra, 230–31.

In the present case, the name of the seller on the listing agreement is Maple Avenue Associates. The rec-

ord indicates that the defendants, record owners of the property, conducted business as Maple Avenue Associates. The sellers' address is listed as "c/o the Kerschner Companies, 5 Eversley Avenue, Norwalk, CT 06851." Testimony indicated that the Kerschner Companies' address may have been used as a matter of convenience, because Senie and Rosenthal had a business relationship with Steven Kerschner, and because the auctioneer was located in the same building. The record also shows, however, that the address of Maple Avenue Associates is 125 Main Street, Westport, the address of Susan Senie is Harbor Road, Westport, and the address of Leonard Rosenthal is in Bridgeport. The address "5 Eversley Avenue, Norwalk," was not the address of either owner. Recently, our Supreme Court held that for the purposes of § 20-325a (b) " 'owner' . . . means the record owner or owners as displayed in the land records." *McCutcheon & Burr, Inc.* v. *Berman,* supra, 522. The court added that "[a]lthough we might reach a different result if title to the property had been held in the name of the partnership . . . we cannot apply the general provisions of § 34-47 when the legislature has specifically addressed in § 20-325a (b) the conditions under which an agent will be allowed to sign a listing agreement on behalf of an owner."[3] Id. The trial court correctly concluded that the listing agreement was invalid due to the plaintiffs' failure to comply with General Statutes § 20-325a (b).

The plaintiffs assert that the defendants should be precluded from raising defenses based on the listing agreement under the doctrine of equitable estoppel. The plaintiffs argue that they relied upon information supplied by the defendants, including the names and addresses of the defendants, to their detriment. They

---

[3] General Statutes § 34-47 governs actions of partners, and codifies the rule that each partner is an agent for the partnership for business purposes of the partnership.

also point out that the agreement is replete with provisions requiring the seller to give accurate information, and claim that they have no duty under the contract to investigate the accuracy of information supplied by the seller. As previously discussed, § 20-325a is to be strictly construed. There is no provision in the statute allowing for the language of the listing agreement to free the broker from using due diligence to ensure that the information included in the listing is accurate.

In *Currie* v. *Marano,* 13 Conn. App. 527, 537 A.2d 1036, cert. denied, 207 Conn. 809, 541 A.2d 123 (1988), the plaintiff broker sought to estop the defendant seller from asserting the defense of noncompliance with § 20-325a. The broker had produced a buyer after the expiration of the written listing agreement, and claimed that the seller benefited from that service. This court held that the plaintiff could not maintain a cause of action because of his failure to comply with the requirement of § 20-325a that the brokerage services be rendered "pursuant to a contract or authorization from the person for whom such acts were done or services rendered." The plaintiffs assert that *Currie* is inapplicable to the present case because that case involved expiration of the written agreement. We disagree. In *Currie,* the plaintiff did not comply with the statutory requirement that brokerage services be performed in accordance with a valid written agreement. General Statutes § 20-325a (b) (1). Under § 20-325a, there is no distinction between an agreement that is invalid because it has expired and one that is invalid because it contains incorrect information.

The plaintiffs also assert that all of the documents read together fulfill the requirements of § 20-325a. In *Boline* v. *Albert,* 23 Conn. App. 688, 583 A.2d 945 (1991), the plaintiff claimed she fulfilled the requirements of § 20-325a through the creation of a second

agreement. In that case, two contracts referring to the same piece of property were deemed not to satisfy the statutory requirements because neither contract referred to the other. Id., 691. " '[S]eparate documents will be deemed to constitute a valid contract under § 20-325a (b) if they collectively satisfy the statutory requirements *and relate to the same agreement, [Good* v. *Paine Furniture Co.,* 35 Conn. Sup. 24, 27, 391 A.2d 741 (1978)]. It is not within the power of the courts to create new and different agreements. *Collins* v. *Sears Roebuck & Co.,* 164 Conn. 369, 375, 321 A.2d 444 (1973).' . . ." (Citations omitted; emphasis in original.) *Boline* v. *Albert,* supra. In *Boline,* although the documents referred to the same piece of property, they did not point unquestionably to each other so as to create a consistent contract. Id. Here, the plaintiff seeks to create a consistent contract through introduction of the real estate sales contract, checks drawn on the Maple Avenue Associates account and signed by the defendants, and a title report that listed the defendants as record owners of the property. We conclude that because our legislature and courts have consistently chosen to require strict accuracy in the listing agreement itself, the trial court was correct in deciding that the combination of documents in this case failed to satisfy the requirements of § 20-325a.

The plaintiffs next claim that summary judgment was improper because they could have recovered in quantum meruit. The plaintiff concedes, however, that "[i]f the listing agreement should prove faulty, such as not being in compliance with § 20-325a, the broker is precluded from recovering in quantum meruit . . . or from seeking equitable relief . . . ." *Goldblatt Associates* v. *Panza,* 24 Conn. App. 250, 253, 587 A.2d 433 (1991). In an effort to show that the present case lies outside the scope of *Goldblatt* and the requirements of § 20-325a, plaintiffs argue that the real estate auction

agreement at issue in this case is governed by the statute of frauds, rather than by § 20-325a. We disagree. The plaintiffs are licensed real estate brokers and are trying to recover a commission allegedly earned as the result of a real estate transaction. Section 20-325a applies to all actions to recover real estate commissions. To categorize auction agreements such as the one in the present case as outside the scope of § 20-325a would be contrary to the legislative intent as expressed by the plain language of the statute.

The plaintiffs next claim summary judgment should not have been granted on account of judicial admissions. "A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it. It may take the shape of a formal stipulation, or may be informal, as where a party upon the witness stand unequivocally concedes a fact for the purpose of the trial." *King* v. *Spencer,* 115 Conn. 201, 204, 161 A. 103 (1932).

The plaintiffs rely upon a portion of the transcript from the prejudgment remedy hearing to demonstrate that when Rosenthal signed some of the auction agreements on October 13, 1989, he did not believe they were listing agreements.[4] Whether Rosenthal knew that the

---

[4] The plaintiffs' brief quotes the following exchange that occurred during direct examination of Leonard Rosenthal by the plaintiffs' attorney on September 24, 1990:

"Q: Mr. Rosenthal. Let me ask you this. Do you think that there is a distinction between a broker selling a piece of real estate during the normal course and a broker selling a piece of real estate through the auction process.

"A: You are asking me my opinion now or then?

"Q: Now.

"A: Yes. No difference.

"Q: There is no difference?

"A: Well let me tell you that I was so overwhelmed with the kind of problems we were in, financial problems, and the possible negative aspects of what they were proposing we should do, that is to say, let it go at any price no matter what anybody paid, that I didn't give much thought to whether

documents were listing agreements is irrelevant. All actions to recover real estate commissions are governed by § 20-325a, and the statute requires specific behavior. The plaintiffs' noncompliance with § 20-325a is not cured by Rosenthal's admitted ignorance of the law.

The plaintiffs also claim that the trial court incorrectly ruled that they could not prevail on their CUTPA claim on account of their noncompliance with § 20-325a. Our Supreme Court recently ruled that noncompliance with § 20-325a will bar a CUTPA claim if the cause of action arises from the listing agreement. "Because the listing agreement did not comply with § 20-325a (b), the defendants were legally entitled to refuse to pay a commission and their reliance on the statute cannot translate into a CUTPA claim." *McCutcheon & Burr, Inc.* v. *Berman,* supra, 530. In the present case, from the moment the listing agreement was executed, it was flawed due to its noncompliance with § 20-325a (b), and the defendant was under no obligation to pay the commission. As in *McCutcheon,* "the plaintiff's CUTPA claim simply states an alternative means for attempting to collect the commission provided for in the listing agreement." Id., 529.

---

it was a listing or not a listing. I know it said auction agreement. As far as I was concerned it meant that some guy was going to stand there with a hammer. When he sold the property he got a percentage of whatever the sale price was because he sold it at an auction.

"Q: Did you agree to pay that percentage?

"A: As an auctioneer, yes.

"Q: I believe you indicated earlier that you didn't think that Plaintiffs exhibit A was a valid listing—

"The Court: Am I missing something right now? I think the witness said he agreed to pay a percentage to the auctioneer when the hammer came down and the sale was concluded.

"[Plaintiffs' Counsel]: That's what he said.

"[Defendant's Counsel]: He did say that Your Honor.

"The Court: And it came down, was concluded and the auctioneer didn't get paid a percentage?"

The plaintiffs' further assert that the trial court should not have dismissed their CUTPA claim simply because they did not allege fraud and misrepresentation in their complaint. The plaintiffs' complaint alleged that "[t]he aforementioned acts of the Defendants in engaging the Plaintiffs and then refusing to pay constitute unfair trade practices within the purview of § 42-110b et seq., in that their actions were unethical, immoral, oppressive and unscrupulous." As previously discussed, the defendants' refusal to pay the commission was permitted in light of the plaintiffs' noncompliance with § 20-325a.

The plaintiffs' final claim is that the trial court improperly dismissed their motion to open the judgment. There is nothing to indicate that the trial court abused its wide discretion in the area of motions to open by denying the motion in this case. "The ruling of a trial court on a motion to open or set aside the verdict will not be overturned on appeal unless the trial court acted in clear abuse of its discretion." *Northeast Enterprises* v. *Water Pollution Control Authority,* 26 Conn. App. 540, 545, 601 A.2d 563 (1992).

In light of our conclusion that the trial court correctly granted the defendants' motion for summary judgment, we need not address the defendants' appeal from the denial of their motion to dissolve the prejudgment remedy. *McCutcheon & Burr, Inc.* v. *Berman,* supra, 530.

On the plaintiffs' appeal (10517), the judgment is affirmed; the defendants' appeal (9567) is dismissed and the case is remanded with direction to order the release of the plaintiffs' prejudgment attachment.

In this opinion the other judges concurred.