NEW ENGLAND INVESTMENT PROPERTIES, INC. *v.*
SPIRE REALTY AND DEVELOPMENT
CORPORATION ET AL.
(11177)

O'CONNELL, HEIMAN and FREEDMAN, Js.

Argued March 31—decision released June 22, 1993

*Daniel S. Fabricant,* with whom, on the brief, was *Jeffrey A. McChristian,* for the appellant (plaintiff).

*David A. Netburn,* for the appellees (defendants).

O'CONNELL, J. The plaintiff appeals from the summary judgment rendered for the defendants[1] in this action to collect a real estate broker's commission. The plaintiff claims that the trial court improperly held that (1) the listing agreement was unenforceable under General Statutes § 20-325a (b),[2] and (2) the plaintiff could

---

[1] There are two defendants in this case, Spire Realty and Development Corporation (Spire Corporation) and Spire Realty of Enfield Associates Limited Partnership (Spire Enfield). Spire Enfield is a limited partnership formed and organized by Spire Corporation in January, 1990.

[2] General Statutes § 20-325a (b) provides: "No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written docu-

not invoke estoppel to preclude the defendants from relying on General Statutes § 20-325a. We affirm the judgment of the trial court.

This appeal arises from a listing agreement between the plaintiff real estate broker and the defendants regarding real property in Enfield. In November, 1989, the defendants orally agreed to pay the plaintiff a commission if it found a tenant for its property.[3] Later that month, the plaintiff prepared and forwarded a listing agreement to the defendants but the defendants did not sign the agreement at that time. Subsequently, the plaintiff located a tenant, Pace Membership Warehouse, Inc., which entered into a lease with the defendants on November 30, 1989. The defendants did not sign the written listing agreement until January 16, 1990.

On September 16, 1991, the plaintiff commenced this action after the defendants failed to pay the full commission specified in the listing agreement.[4] On February 18, 1992, the trial court granted summary judgment in favor of the defendants, concluding that (1) the listing agreement was unenforceable because it did not satisfy the requirements of General Statutes § 20-325a (b), and (2) the defendants were not estopped from relying on § 20-325a as a defense. The plaintiff appealed.

I

The plaintiff's first claim implicates the statutory restriction that a broker may not collect a commission

ment executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent."

[3] At the time of the oral agreement, Spire Corporation was the optionee of the property. The agreement was contingent on Spire Corporation's acquiring title to the property, which it did on January 25, 1990. Spire Corporation then transferred the property to Spire Enfield.

[4] The total commission was $225,000. Spire Corporation made $25,000 payments to the plaintiff on April 1, 1990, and October 11, 1990.

unless there was a valid listing agreement in effect prior to rendering the services in question. Such agreement must "(1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into . . . (4) contain the conditions of such contract . . . and (5) be signed by the owner or an agent authorized to act on behalf of the owner . . . and by the real estate broker or his authorized agent." General Statutes § 20-325a (b). It is not necessary that the listing agreement be contained in a single document. For separate documents to constitute a valid contract under the statute, however, the documents must collectively satisfy the requirements of the statute and relate to the same listing agreement. *Jay Realty, Inc.* v. *Ahearn Development Corporation,* 189 Conn. 52, 55, 453 A.2d 771 (1983); *Boline* v. *Albert,* 23 Conn. App. 688, 691, 583 A.2d 945 (1991). The plaintiff argues that the lease to Pace in conjunction with the listing agreement satisfy the statutory requirements. We do not agree.

In order for a listing agreement to satisfy the statutory mandate and provide a basis of recovery to the broker, the agreement must be in effect at the time the broker's services are rendered. See *Ditchkus Real Estate Co.* v. *Storm,* 25 Conn. App. 51, 55–56, 592 A.2d 959, cert. denied, 220 Conn. 905, 593 A.2d 97 (1991); *Currie* v. *Marano,* 13 Conn. App. 527, 530, 537 A.2d 1036, cert. denied, 207 Conn. 809, 541 A.2d 1238 (1988). Even if the lease and the listing agreement, read together, satisfied the statute, it was necessary that both be in existence when the services were rendered. That was not the situation here.

On November 30, 1989, the last date on which the plaintiff rendered its brokerage services, the only document in existence was the lease to Pace. The listing agreement was not signed until January 16, 1990, nearly two months later. Section 20-325a (b) is man-

datory and subject to strict construction. *Howland* v. *Schweir,* 7 Conn. App. 709, 714, 510 A.2d 215 (1986). Because no listing agreement was in effect when the plaintiff's services were rendered, the plaintiff is statutorily barred from recovering a commission. " 'A broker who does not follow the mandate of the statute does so at his peril.' " Id., quoting *Thornton Real Estate, Inc.* v. *Lobdell,* 184 Conn. 228, 230–31, 439 A.2d 946 (1981); see also *Real Estate Auctions, Inc.* v. *Senie,* 28 Conn. App. 563, 570–71, 611 A.2d 452 (1992).

## II

The plaintiff next argues that even if it cannot recover because the listing agreement was invalid, the defendant should be estopped from refusing to pay its commission because the facts of the case demonstrate its equitable entitlement thereto. The plaintiff's reliance on *Currie* v. *Marano,* supra, is misplaced. In fact, *Currie,* which is factually similar to the present case, expressly ruled out application of the estoppel doctrine when there was no valid listing agreement. In *Currie,* the plaintiff was a real estate broker seeking a commission. Following the trial court's finding that his services had been performed after his listing agreement had expired, he argued that the defendant property owners were equitably estopped from raising the plaintiff's noncompliance with the listing statute as a defense. Id., 531.

The *Currie* court refused to apply estoppel for two reasons. First, a broker is expected to know the laws regulating his profession and when ignorance of those laws is the primary cause of his need for relief, the doctrine of estoppel does not apply. The court concluded that Currie should have been aware of the strict legal prerequisites to obtaining a broker's commission and it was his ignorance of those prerequisites that was the primary reason he was seeking to apply the doctrine

of estoppel. Id., 531–32. This is on all fours with the present case. Here, the plaintiff real estate broker should have been aware that the law would not permit it to recover a commission if it failed to have a valid listing agreement signed prior to rendering its services. Second, the *Currie* court recognized that "General Statutes § 20-325a has been strictly construed and enforced. . . . The scenario arising most commonly in cases of real estate commission claims, when there has not been compliance with the listing statute, as here, presents a fact pattern in which a real estate owner allegedly reaps the benefits of a broker's services without paying for them. To allow recovery on . . . the plaintiff's legal theories in the present case would nullify § 20-325a and emasculate the state's real estate sales licensing system." (Citations omitted.) Id., 531. For the same reasons, we reject the plaintiff's attempt to employ equitable estoppel in this case.

The plaintiff also attempted to invoke equitable estoppel in support of its contention that the failure of the defendants to abide by the invalid listing agreement constituted a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110b. This claim is controlled by *McCutcheon & Burr, Inc.* v. *Berman,* 218 Conn. 512, 590 A.2d 438 (1991), in which our Supreme Court enunciated that "[t]he plaintiff's invocation of equitable principles in support of its CUTPA claim is an attempt to effect an end run around the requirements of § 20-325a (b). . . . The plaintiff's attempt to circumvent the requirements of § 20-325a (b) by filing a CUTPA claim must . . . be denied." Id., 530; see also *Real Estate Auctions, Inc.* v. *Senie,* supra, 573–74.

The plaintiff's reliance on *Habetz* v. *Condon,* 224 Conn. 231, 618 A.2d 501 (1992) is unavailing. *Habetz* involved General Statutes § 20-429 (a), a part of the Home Improvement Act, and is not authority for a case

concerning a real estate broker's listing agreement. Real estate listing agreements "are governed exclusively by § 20-325a . . . ." (Internal quotation marks omitted.) *McCutcheon & Burr, Inc.* v. *Berman,* supra. Accordingly, analogizing to cases from other areas of law is of little value. See, e.g., *William Pitt, Inc.* v. *Taylor,* 186 Conn. 82, 84, 438 A.2d 1206 (1982) (listing contracts do not fall within the statute of frauds); *Goldblatt Associates* v. *Panza,* 24 Conn. App. 250, 253, 587 A.2d 433 (1991) (broker cannot recover in quantum meruit); *Currie* v. *Marano,* supra, 532 (broker cannot invoke equitable estoppel). Consequently, *Habetz* is not relevant to a construction of § 20-325a.

### III

Practice Book § 384 provides that rendition of a summary judgment is appropriate "if the pleadings, affidavit and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is proper when a plaintiff real estate broker seeks to recover a judgment without a valid listing agreement. See *Thornton Real Estate, Inc.* v. *Lobdell,* supra.

The judgment is affirmed.

In this opinion the other judges concurrred.