[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this two count action alleging breach of contract and estoppel, the plaintiffs, M.R. Wachob Company Inc. and George O'Brien, seek to recover unpaid commissions pursuant to an exclusive real estate listing agreement. The plaintiffs are a real estate brokerage corporation and individual broker who allege that the defendant, MBM Partnership, failed to make all commission payments due following the plaintiffs' procurement of a subtenant for the defendant.
In their complaint, dated May 28, 1992, the plaintiffs allege the following facts. Bruce Minoff, doing business as Minoff Properties, not a party to this action, is the owner of certain office space in Norwalk. Minoff leased this office space to a company called Glyco, also not a party to this action. Glyco relocated to New Jersey prior to the expiration of the lease and at that time, the defendant executed a written guaranty to Minoff for the remainder of Glyco's lease payments. Thereafter, the defendant enlisted the plaintiff's enlisted the plaintiffs' services to procure a subtenant f the office space, and entered into an exclusive listing agreement with the CT Page 2915 plaintiffs dated June 28, 1989 and amended on October 20, 1989 and November 8, 1990. The plaintiff's procured a subtenant, but the defendant only paid half of the commission payments due under the agreement. The plaintiffs therefore seek monetary damages, garnishment of the rental payments paid to the defendant by the tenant, attorney's fees, costs and interest.
On September 17, 1992, the defendant filed an answer, special defenses and counterclaim which was amended on October 22, 1992. The special defenses assert the following: that plaintiffs fail to state a claim upon which relief may be granted; that plaintiffs failed to comply with General Statutes 20-325a; that plaintiffs' services were performed in a negligent and careless manner; that plaintiffs breached the implied covenant of good faith and fair dealing; and there has been accord and satisfaction. The two count counterclaim alleges fraudulent misrepresentation and negligent misrepresentation.
The defendant filed a motion (#117) for summary judgment on the grounds that there exists no genuine issue of material fact. In support of its motion, the defendant submitted the affidavit of Malvern Burroughs, who signed the listing agreement on behalf of MBM, and copies of the June, 1989 listing agreement, as well as the October. 1989 and November, 1990 amendments to such agreement. In opposition to the defendant's motion for summary judgment, the plaintiffs filed the affidavit of George O'Brien, copies of the original listing agreement and the two amended versions, and a copy of the April, 1987 guaranty executed by MBM.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wadia Enterprises v. Hirschfeld,224 Conn. 240, 247, 618 A.2d 506 (1992). A material fact is one that will make a difference in the result of a case. Hammer v. Lumbermen's Mutual Casualty Co. 214 Conn. 573, 578, 573 A.2d 699
(1990). "`The test is whether a party would be entitled to a directed verdict on the same facts.'" Id., quoting State v. Groggin, 208 Conn. 606,616, 546 A.2d 250 (1988).
"[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact." (Citation omitted; internal quotation marks omitted.) Connecticut Bank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81, 595 A.2d 334 (1991). However, if the evidence presented is sufficient, it is "not rebutted by the CT Page 2916 bald statement that an issue of fact does exist." (Citations omitted; internal quotation marks omitted.) Hammer v. Lumberman's Mutual Casualty Co., supra, 579. In deciding such a motion, the court must view the evidence in the light most favorable to the non moving party. Connecticut Bank Trust Co. v. Carriage Lane Associates, supra.
The defendant argues that the plaintiffs did not comply with General Statutes 20-325a(b) because Minoff, who plaintiffs describe as the owner of the office space which was the subject of the listing agreement, did not sign such agreement.[1] In response, the plaintiffs argue that the signature required on a listing agreement for a sublease, where an express right to assign or sublet is granted to the owner of the leasehold interest, is the signature of the owner of the leasehold interest.
"The right of a real estate broker to recover a commission is dependent upon whether the listing agreement meets the requirements of20-325a(b)." McCutcheon Burr, Inc. v. Berman, 218 Conn. 512, 519,590 A.2d 438 (1991). General Statutes 20-325a(b) provides in pertinent part that a listing agreement must:
 (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into . . . (4) contain the conditions of such contract . . . and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent."
"It is well established that the requirements of 20-325a(b) are mandatory rather than permissive and that the statute is to be strictly construed." McCutcheon Burr, Inc. v. Berman, supra, 520; Real Estate Auctions, Inc. v. Senie, 28 Conn. App. 563, 568, 611 A.2d 452 (1992). "`A broker who does not follow the mandate of [20-325a(b)] does so at his peril.'" McCutcheon Burr, Inc. v. Berman, supra, 218 Co. 520, quoting Thornton Real Estate, Inc. v. Lobdell, 184 Conn. 228, 230-31, 439 A.2d 946 (1981).
Our Supreme Court has recently concluded that "`owner,' as used in 20-325a(b), means the record owner or owners as displayed on the land records." McCutcheon Burr, Inc. v. Berman, supra, 522; Real Estate Auctions v. Senie, supra, 28 Conn. App. 569; see also The Farley Co. v. Alex, 9 CTLR 480 (July 30, 1993, Higgins, J.) (court granted motion to strike when owner of record or his agent did not sign listing agreement); Coldwell Banker Real Estate v. Calabrese, 8 CTLR CT Page 2917 496 (March 11, 1993, Blue, J) (although noting unfortunate result, court held that plaintiff's breach of contract action could not be sustained since plaintiff signed listing agreement for rental of property prior to becoming record owner). In reaching such a conclusion the court noted the fact that the legislature changed the word "seller" to "owner" in 1985. McCutcheon Burr, Inc. v. Berman, supra, 522-23 n. 12. "The purpose of this change in terminology was to clarify whose signature was required on the listing agreement, especially in cases where the broker was performing services unrelated to the sale of property, such as locating tenants for owners of rental properties." Id. "Interpreting the word `owner' to mean `record owner' advances this purpose because a broker can determine who must sign a listing agreement through the simple expedient of examining the land records." Id.
In the present case, the plaintiffs state that the listing agreement was between the plaintiffs and MBM, by its partner, Malvern Burroughs. The plaintiffs also state in their complaint that Minoff is the record owner of the office space. The signatories to the listing agreement and its amendments submitted by both parties are O'Brien and/or Wachob and Burroughs. Caselaw interpreting 20-325a(b) makes clear that "owner" means "record owner." Furthermore, after defining it as such, neither the Supreme nor Appellate Court has created exceptions to the definition or even allude to cases where it would not apply. Therefore, since Minoff, the record owner of the office park, did not sign the listing agreement or any amendment thereto, plaintiffs did not comply with 20-325a(b) and their breach of contract claim is barred as a matter of law. Accordingly, the defendant's motion for summary judgment as to count one of the plaintiffs' complaint is granted.
When a listing agreement does not comply with 20-325a(b), courts have disallowed recovery under a theory of equitable estoppel since this "would nullify 20-325a and emasculate the state's real estate sales licensing system." New England Investment Properties v. Spire Realty, supra, 31 Conn. App. 687, quoting Currie v. Marano, 13 Conn. App. 527,531, 537 A.2d 1036, cert. denied, 220 Conn. 905, 593 A.2d 97 (1991). "[A] broker is expected to know of the laws regulating his profession and when ignorance of those laws is the primary cause of his need for relief, the doctrine of estoppel does not apply." New England Investment Properties v. Spire Realty, supra, 686.
In the present case, the second count of the plaintiffs' complaint alleges equitable estoppel based upon the defendant's failure to make all commission payments due the plaintiffs. Accordingly, the defendant's CT Page 2918 motion for summary judgment as to count two is also granted.
The plaintiff also filed a cross motion for summary judgment dated October 26, 1993. However, the disposition of defendant's motion renders this motion moot in effect, and it is denied accordingly.
So Ordered.
Dated at Stamford, Connecticut, this, 17th day of March, 1994.
William B. Lewis, Judge