[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
 BACKGROUND
The plaintiffs, Robert E. Dow and Dow Realty Company, filed a two count complaint on March 11, 1996 based on breach of contract and negligent misrepresentation claims, seeking to recover commissions on the sale of property owned by the defendant, New Haven Savings Bank. The plaintiffs allege that "[o]n or about May 27, 1994," the subject property was sold to "a buyer procured by the plaintiffs." They further allege that the defendant failed to honor a written listing agreement originally entered into between the plaintiffs and Branford Office Venture, the former property owners. CT Page 8272
On October 25, 1996, the defendant filed an answer and two special defenses. The first special defense asserted that the plaintiffs' acts or services were not performed pursuant to a contract or authorization provided in General Statutes § 20-325a
(b). The second special defense asserted that the action was barred by the applicable statute of frauds as provided in General Statutes § 52-550. On December 12, 1996, the plaintiffs filed a denial to each special defense.
On October 27, 1997, the defendant filed a motion for summary judgment on the ground that General Statutes § 20-325a (b) barred the plaintiffs' action seeking commissions on the sale of property because there was no valid written listing agreement between the plaintiffs and the defendant. In support, the defendant attached the affidavit of Andrew Hvizd, III, the Assistant Vice President in the Owned Real Estate Department of New Haven Savings Bank. Plaintiffs filed a memorandum in opposition on December 16, 1997. On March 5, 1998, the defendant filed a supplemental memorandum in support of its motion for summary judgment. The plaintiffs responded with a supplemental memorandum in opposition, filed March 17, 1998. On March 26, 1998 the defendant filed a second supplemental memorandum in support of its motion.
 LEGAL DISCUSSION
Both parties rely on differing versions of General Statutes § 20-325a to support their respective positions. That statute governs actions to recover commissions arising out of real estate transactions. The statute in effect at the time the subject property was sold contained various requirements for listing agreements that were strictly construed. The statute was amended, effective in May of 1994, however, so as to require only "substantial compliance" with the statutory requirements.
In its memorandum in support, the defendant argues that the plaintiffs are not entitled to recover commissions on the sale of the property because they do not have a written listing agreement as required by General Statutes § 20-325a (b). Specifically, the defendant argues that the plaintiffs never obtained any real estate listing agreement with the defendant, let alone one complying with the specific requirements of the statute. The defendant attaches the affidavit of Andrew Hvizd, III the Assistant Vice President in the Owned Real Estate Department of CT Page 8273 New Haven Savings Bank. In his affidavit, Andrew Hvizd, III, attests that "[b]ased upon the Bank's files and applicable information, there was never any written listing agreement for the Property between the Bank and Dow Realty Company." (Defendant's Exhibit A: Affidavit of Andrew Hvizd, III, ¶ 8.)
In their opposing memorandum, the plaintiffs argue that they had entered into a valid listing agreement with the former property owners, which was subsequently accepted by the defendant. In addition, they cite McCutcheon Burr, Inc. v.Berman, 218 Conn. 512, 530, 590 A.2d 438 (1991) in support of the argument that a listing agreement can be, formed by a series of documents.
In its supplemental memorandum in support, the defendant reiterates that there was never any valid listing agreement entered into between itself and the plaintiffs. In support, the defendant attaches the plaintiffs' answers to interrogatories, a copy of the "Exclusive Right to Lease Agreement," and the defendant's first request for production of documents. In addition, the defendant argues that the plaintiffs' reliance onMcCutcheon Burr, Inc. v. Berman, supra for the proposition that an enforceable listing agreement may be comprised of a series of documents does not assist their case.
The plaintiffs argue in their supplemental memorandum in opposition that the court should deny the defendant's motion for summary judgment under the authority of Public Acts 1994, No.94-240, § 3. Namely, the plaintiffs argue that in amending §20-325a by adding a new subsection (c), Public Act 94-240 was intended to have an immediate retroactive effect on all claims to recover commissions which were subject to the requirements of § 20-325a. Thus, using the plaintiffs' logic, the more lenient requirements of Public Act 94-240 should retroactively apply to the plaintiffs' listing agreement although the property was sold before the effective date of the public act. The plaintiffs argue that the amended statute justifies the bringing of their claim because they "substantially complied" with the provisions under the statute and therefore entered into an enforceable listing agreement with the defendant. In addition, the plaintiffs assert that Public Act 94-240 permits them to raise a negligent misrepresentation claim.
The defendant counters that the changes effected in the statute by the passage of Public Act 94-240 were substantive CT Page 8274 rather than procedural. Thus, the defendant argues that the changes should not be given retroactive effect unless the legislature "clearly and unequivocally expresse[d]" that intention. In this case, argues the defendant, the absence of any such clear and unequivocal expression of legislative intent renders the new statutory provisions inapplicable to the plaintiffs' case. In addition, the defendant argues that the plaintiffs would fail to meet the "substantial compliance" requirement of the amended statute, even if it did apply to the plaintiffs' case. Finally, the defendant asserts that the plaintiffs cannot avoid the statutory requirements by claiming negligent misrepresentation.
The version of General Statutes § 20-325a (b), which was in force in May 1994 when the property was sold, provided that "[n]o person, licensed under; the provisions of this chapter, shall commence or bring any action in respect; of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the real estate broker or the real estate broker's authorized agent." General Statutes (Rev. to 1993) § 20-325a
(b).
As will be discussed, judicial interpretation of that version of the statute imposed strict compliance with the listed technical requirements, while the current version simply requires "substantial compliance." Listing agreements are governed exclusively by § 20-325a. . . ." William Pitt, Inc. v.Taylor, 186 Conn. 82, 84, 438 A.2d 1206 (1982); New EnglandInvestment Properties, Inc. v. Spire Realty Dev. Corp.,31 Conn. App. 682, 688, 626 A.2d 1316 (1993). "It . . . [was] well established that the requirements of § 20-325a (b) . . . [were] mandatory rather than permissive and that the statute . . . [was] to be strictly construed." McCutcheon Burr,Inc. v. Berman, 218 Conn. 512, 520, 590 A.2d 438 (1991); NewEngland Land Co. v. DeMarkey, 213 Conn. 612, 623, 569 A.2d 1098
(1990) (listing agreement must include sale price of property);Jay Realty, Inc. v. Ahearn Development Corporation, 189 Conn. 52, CT Page 8275 54, 453 A.2d 771 (1983) (listing agreement lacking addresses of both parties unenforceable); Thornton Real Estate, Inc. v.Lobdell, 184 Conn. 228, 230-31, 439 A.2d 946 (1979) (brokerage contract signed by owner's agent unenforceable under the statute as then worded); Hosan v. Hudiakoff, 178 Conn. 381, 383,423 A.2d 108 (1979) (failure to include broker's address fatal to listing agreement). "A broker who . . . [did] not follow the mandate of the statute . . . [did] so at his peril." Thornton Real Estate,Inc. v. Lobdell, supra, 184 Conn. 230-31.
The Connecticut Supreme Court has made it clear that brokers may not "attempt to effect an end run around the requirements of § 20-325a (b)" by alleging other causes of action. McCutcheon Burr, Inc. v. Berman, supra, 218 Conn. 530 (failure to pay a commission because of a deficient listing agreement does not constitute a CUTPA claim). General Statutes § 20-325a may not be circumvented by claims of equitable estoppel or unjust enrichment. Currie v. Marano, 13 Conn. App. 527, 530-31,537 A.2d 1036 (1988) (allowing claim of equitable estoppel or unjust enrichment would nullify § 20-325a and emasculate the state's real estate sales licensing system). A claim for misrepresentation is barred when the listing agreement fails to comply with § 20-325a. Hunter v. Johnson, Superior Court, judicial district of Hartford-New Britain, Docket No. 478552 (August 22, 1997, Graham, J.) (20 CONN. L. RPTR. 356, 357); The Farley Company v. Alex, Superior Court, judicial district of Hartford, Docket No. 394768 (July 30, 1993, Higgins, J.) (9 CONN. L. RPTR. 480, 482).
The statutory requirements of the listing agreement need not be contained in one writing. Nevertheless, the separate documents must collectively satisfy the statutory requirements and relate to the same agreement in order to constitute a valid contract under § 20-325a (b). Jay Realty, Inc. v. Ahearn DevelopmentCorp., supra, 189 Conn. 55: Real Estate Auctions, Inc. v. Senie,supra, 28 Conn. App. 570-71.
In amending § 20-325a by adding a new subsection (c), Public Acts 1994, No. 94-240, changed the standard of review that courts apply when determining if a listing agreement meets the requirements of General Statutes § 20-325a. Public Acts 1994, No. 94-240(c) provides that "[n]othing in subsection (a) of subsection (b) of this section shall prevent any licensee from recovering any commission, compensation, or other payment in respect to any acts done or services rendered, if such person hassubstantially complied with subdivisions (2) to (6), inclusive of CT Page 8276 subsection (b) of this section and it would be inequitable to deny such recovery." (Emphasis added.) Before the legislature enacted Public Acts 94-240, General Statutes § 20-325a (b) provided the mandatory statutory requirements. McCutcheon v.Burr, Inc. v. Berman, supra, 218 Conn. 530.
Several well established rules exist which are used to determine whether the addition of subsection (c) to § 20-325a
should be given retrospective effect. In determining whether or not a statute is to be given retrospective application, the courts follow the principle that "a statute affecting substantive rights is to be applied only prospectively unless the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." (Internal quotation marks omitted.) Hall v. Gilbert and Bennett Mfg. Co., Inc.,241 Conn. 282, 302, 695 A.2d 1051 (1997). "By contrast, procedural statutes generally are applied retroactively absent a clear expression of legislative interest to the contrary." (Internal quotation marks omitted.) Rice v. Vermilyn Brown, Inc.,232 Conn. 780, 786 n. 12, 657 A.2d 616 (1995); see also Anderson v.Schieffer, 35 Conn. App. 31, 39-40, 645 A.2d 549 (1994).
"[L]egislation which limits or increases statutory liability has generally been held to be substantive in nature." Anderson v.Schieffer, supra, 35 Conn. App. 39. The courts presume that "in enacting a statute, the legislature intended a change in existing law. . . . This presumption, like any other, may be rebutted by contrary evidence of the legislative intent in the particular case. An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act. . . . An amendment that is intended to clarify the original intent of an earlier statute necessarily has retroactive effect." (Citations omitted; internal quotation marks omitted.) State v. State Employees' Review Board,239 Conn. 638, 648-49, 687 A.2d 134 (1997).
"To determine whether an act should be characterized as clarifying legislation, [courts must] look to the legislative history to determine the legislative intent." State v. StateEmployees' Review Board, supra, 239 Conn. 649. "In seeking to discern that intent . . . [the court looks] to the words of the statute itself, to the legislative history, and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general CT Page 8277 subject matter." Hall v. Gilbert and Bennett Mfg. Co., Inc.,supra, 241 Conn. 295. "[I]t is often useful to examine the title of a proposed bill . . . and the purpose the legislature intended to accomplish by its enactment. . . ." (Internal quotation marks omitted.) State v. State Employees' Review Board, supra, 239 Conn. 649. "Although [the courts] usually limit their inquiry of legislative history to remarks made during the debates on the floor of the House of Representatives or the Senate . . . [the courts] have occasionally . . . cast a wider net, when committee testimony contains particularly compelling evidence about the problem, issue or purpose underlying a statute." Mahoney v.Lensink, 213 Conn. 548, 559 n. 15, 569 A.2d 518 (1990); see alsoState v. Magnano, 204 Conn. 259, 277, 528 A.2d 760 (1987). "[I]f the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act. . . ." (Internal quotation marks omitted.) State v. Blasko,202 Conn. 541, 558, 522 A.2d 753 (1987); see also Tureck v.George, 44 Conn. App. 154, 160, 687 A.2d 1309, cert. denied,240 Conn. 914, 691 A.2d 1080 (1997).
Although the standards used to determine whether a statute should be applied retroactively are well established, two cases have reached opposite results in applying these standards to § 20-325a (c). Testimony from the joint committee hearings concerning Public Act 94-240 and the text of § 20-325a (c) provide evidence that the legislature passed Public Act 94-240 in order to change the law and affect substantive rights. Jackson v.Vaill, Superior Court, judicial district of Litchfield, Docket No. 068694 (November 26, 1996, Sheldon, J.). But see ColdwellBanker v. Ward, Superior Court, judicial district of Waterbury, Docket No. 122435, 15 CONN. L. RPTR. 273 (October 17, 1995, McDonald, J.) (holding that Public Act 94-240 should be given retrospective application). Although both cases examine the identical text from Larry Hannifin's joint committee testimony, they both arrive at differing interpretations of the legislative intent.[1]
Although testimony from the House of Representatives and Senate debates do not indicate the legislative intent behind the promulgation of Public Act 94-240, testimony from the committee hearings supports the argument asserted in Vaill thatPublic Act 94-240 should not apply retrospectively. Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1994 Sess., p. 91, 151, 154. The title of the Act, "An Act Concerning the Modernization of the Real Estate License Law" coupled with its CT Page 8278 stated objective to "[u]pdate the Connecticut license law and regulations to conform with the changing needs of today's market and to better protect the buying and selling public"; Conn. Joint Standing Committee Hearings, supra, p. 154.; indicate that the legislature intended to reform and change the law, not clarify it. Conn. Joint Standing Committee Hearings, supra, p. 154. This bill was based on the recommendations made by a 1993 Task Force to "revise the license law." Conn. Joint Standing Committee Hearings, supra, p. 154.
The words "modernize", "revise", and "update" strongly illustrate the legislature's goal to change and modify the law. To modernize a law is "[t]o make [it] modern in appearance, style or character." "Revise" is defined as "[t]o prepare a newly edited version . . ." or "[t]o change or modify." "Update" simply means "[t]o bring up to date." The word "clarify", by contrast, means "[t]o make clear or easier to understand; elucidate." The American Heritage Dictionary (2d College Ed. 1985). The committee testimony never attributed the strict enforcement standard of § 20-325a (b) to a judicial misinterpretation of the statute. Thus, there was never any mention of the need to "clarify" the law. Rather, the committee notes indicate that the legislature felt it was time to change and revise the law to better suit an evolving real estate market.
Another stated purpose behind this bill was the "correction of deficiencies in the present listing agreement law. . . ." Conn. Joint Standing Committee Hearings, supra, p. 154. "A stated desire to remedy such deficiencies and/or to avoid such consequences demonstrates an intent to change the law, not to clarify it. . . ." Vaill, supra. The context of the testimony merely shows that the legislature decided Public Act 94-240 was necessary to revamp and modernize the existing law. The testimony specifically refers to deficiencies in the law, itself, not to deficiencies in the interpretation of the law.
The legislative history of Public Act 94-240 indicates that the legislature intended to change, rather than to clarify the law. Thus, the court will apply the law prospectively and not retrospectively. Because the property was sold "[o]n or about May 27, 1994", prior to the enactment of § 20-325a (c), the plaintiffs listing agreement must comply with the stricter requirements of § 20-325a (b).
Here, the defendant has satisfied the burden of demonstrating CT Page 8279 the absence of any material fact. The defendant provides the affidavit of Andrew Hvizd, the Assistant Vice President in the Owned Real Estate Department of New Haven Savings Bank, stating that there was never any written listing agreement for the property between the defendant and plaintiff. The plaintiffs, on the other hand, fail to provide counteraffidavits and/or concrete evidence to overcome the defendant's claim and substantiate their adverse claim.
Although the affidavit of the plaintiff, Robert E. Dow[2], states that a valid listing agreement existed between Dow and the prior property owners, Bradford Office Venture, nowhere does the affidavit provide facts and evidence showing that there was a valid listing agreement with the defendant, New Haven Savings Bank. The affidavit of Robert E. Dow states that "New Haven Savings Bank acknowledged orally and in writing its obligations under the Initial Listing Agreement. . . ." The plaintiffs, however, failed to attach a copy of such a written acknowledgment, or proof of documents showing a valid listing agreement with the defendant. More importantly, it is questionable whether a mere written acknowledgment would suffice to meet the stringent requirements of § 20-325a(b). In addition, the plaintiffs' negligent misrepresentation claim is inadequate to overcome the motion for summary judgment because brokers may not "attempt to effect an end run around the requirements of § 20-325a (b)" by alleging other causes of action. McCutcheon Burr, Inc., v. Berman, supra, 218 Conn. 512.
Even if the court were to conclude that the "substantial compliance" standard of § 20-325a (c) should apply retrospectively to the plaintiffs' listing agreement, the plaintiffs fail to prove that their listing agreement meets this more lenient standard. General Statutes § 20-325a (c) explicitly allows for substantial, rather than strict compliance. Nevertheless, the statute still mandates strict compliance with the requirement that a valid listing agreement be in writing, signed by the property owner. As mentioned before, the plaintiffs fail to attach any documents showing the defendant's written acknowledgment of the initial listing agreement. In addition, they fail to assert specific facts showing their compliance with each of the requirements of § 20-325a (c). The plaintiffs neglect to provide proof of any written documentation much less compliance with the stringent technical requirements of § 20-325a (b). Accordingly, the defendant's motion for summary judgment will be granted.
CT Page 8280
 CONCLUSION
Based on the foregoing, the defendant's Motion for Summary Judgment (#106) is granted.
HARTMERE, J.