[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
Plaintiff Union Trust Company has moved for summary judgment against defendants Lionel S. and Patricia J. Jackson. The CT Page 3926 questions to be resolved by this court relate to an oral agreement to extend the time for the repayment of a loan. There are two principal questions. Have the defendants shown facts which are legally sufficient to take the oral agreement out of the Statute of Frauds? Have the defendants shown valid consideration for the oral agreement? For the reasons stated below, the Motion for summary judgment is granted.
Plaintiff Union Trust Company commenced this action to recover the principal and interest due on a loan made to defendants Lionel S. and Patricia J. Jackson. In the first count, it alleges a cause of action on a note. In the second count, it alleges a cause of action for unjust enrichment. The defendants have filed an answer to the complaint, five special defenses, and an affirmative pleading which they characterize as a "set-off, cross-claim and counterclaim."
The parties do not dispute the existence of facts to support the allegations of the complaint. What is at issue is the special defenses and the counterclaim. The plaintiff contends these are insufficient and under applicable principles of substantive law it is entitled to judgment as a matter of law.
 I
The standard for deciding a motion for summary judgment is well established. "Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact"; (internal quotation marks omitted) ConnecticutBank Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81,595 A.2d 334 (1991); D.H.R. Construction Co. v. Donnelly,180 Conn. 430, 434, 429 A.2d 908 (1980); "it [is] incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." Connell v. Colwell,214 Conn. 242, 251, 571 A.2d 116 (1990). "The presence . . . of an alleged adverse claim is not sufficient to defeat a motion for summary judgment." Farrell v. Farrell, 182 Conn. 34, 39,438 A.2d 415 (1980); Real Estate Auctions, Inc. v. Senie, 28 Conn. App. 563,567, 611 A.2d 452 (1992). Moreover, "[i]n deciding a motion for summary judgment, the trial court must view the evidence in CT Page 3927 the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Connecticut Bank Trust Co. v.Carriage Lane Associates, supra, 781 quoting Strada v.Connecticut Newspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005
(1984)." Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240,246-47 (1992).
 II
In the defendants answer to the complaint, the defendants admit to the execution of the note on April 18, 1989, and the advancement to them of $452,000 but claim a lack of knowledge with respect to the remaining allegations of the complaint. The allegations which have not been admitted by the defendants are supported by affidavits submitted by the plaintiff. The plaintiff's proof is summarized in Appendix A of this memorandum of decision.
The defendants do not take issue with the documentary evidence submitted by the plaintiff. Instead, the defendants have submitted documents in support of their five special defenses and their counterclaim.
In the first special defense, the defendants allege that in June of 1991 the parties agreed that the note would no longer be payable on demand and that the defendants would be required to pay $5,000 a month and keep the interest current. The defendants allege that they made payments to the bank under the agreement and that the payments were accepted.
In each of the remaining special defenses, the defendants repeat the allegations as to the agreement to extend the time of payment and in addition allege different conclusions as to the legal consequences of the agreement. In the second special defense, the defendants allege "the parties mutually agreed and entered into a novation of the original loan contract . . . ." In the third special defense, the defendants allege that the bank "knowingly and intelligently waived its rights under the original demand loan agreement . . . ." In the fourth special defense the defendants allege the agreement "constituted an accord and satisfaction."
In the fifth special defense, the defendants allege the bank is acting "in bad faith" by accepting the benefits of the agreement and thereafter bringing suit. In the counterclaim, the CT Page 3928 defendants repeat the allegations of the fifth special defense and further allege the bank's conduct "constitutes an unfair or deceptive practice which is in violation of the Connecticut Unfair Trade Practices Act."
To support the allegations of the special defenses and counterclaim, the defendants have submitted bank memoranda, a letter from an orthopedic surgeon, a transcript of a deposition, and an affidavit from a bank officer. These documents show that the Jacksons applied for a $452,000.00 loan and that "the $452M will pay Federal and State taxes and will be combined with a $2.3 million mortgage request." (Def. Ex. A). On April 18, 1989, the bank issued a commitment letter for a demand loan in the amount of $452,000.00 (Defendant's Ex. D). On April 28, 1989, the bank declined the mortgage request because the property value was too low. (Defendant's Ex. A). In August of 1989, Mr. Lionel Jackson suffered severe injuries in a fall on his boat and is now severely disabled.[1] In May and June of 1991, bank personnel discussed with the defendants' attorney, Gregory C. Willis, the status of the defendants' loan. (Def. Ex. C at p. 12 and Def. Ex. E). Sometime after the discussion, the defendants made two $5,000.00 payments to the plaintiff.
The defendants contend the discussions between the bank officers and Attorney Willis resulted in an agreement to extend the time of payment. The defendants also contend that this agreement, together with the two payments, constituted a novation of the original contract, a waiver of the bank's rights, and an accord and satisfaction of the demand loan. While the bank has denied the existence of the oral agreement as well as the conclusionary allegations about the legal affect of the agreement, the bank has not offered any documentary evidence to rebut Attorney Willis' recollection of the meetings. Because this court must view the evidence in the light most favorable to the defendants, the court relies upon Attorney Willis' description of the meetings. The pertinent parts of Attorney Willis' deposition are set forth in Appendix B of this memorandum.
 III A
The plaintiff argues the first special defense is legally insufficient because the agreement to extend the time of payment is not in writing and is not supported by consideration. The CT Page 3929 first prong of the plaintiff's argument is based on the Statute of Frauds, General Statutes § 52-550. This statute provides, in part, as follows:
 "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: . . . (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars."
The parties agree that the Statute of Frauds is applicable but disagree as to whether the defendants have made a factual showing which is legally sufficient to take the extension agreement out of the statute.[2] The defendants argue that their two payments constitute part performance of the oral agreement and that this conduct takes the oral agreement out of the Statute of Frauds. The plaintiff, on the other hand, argues that the doctrine of part performance is inapplicable to loan transactions and, alternatively, that the defendants' conduct can not in any way be construed as part performance.
"The doctrine of part performance as related to the Statute of Frauds is based on estoppel." Galvin v. Simons, 128 Conn. 608,609 (1942). In arguing that the doctrine does not apply to loan transactions, the plaintiff relies on Burkle v. Superflow Mfg.Co., 137 Conn. 488 (1951) wherein the Supreme Court stated the doctrine of part performance only applies to agreements for the sale of real estate. The Burkle case can be distinguished from the present case since Burkle was decided before part 6 was added to the Statute of Frauds. There appears to be no reason why the equitable doctrine should not apply to loan transactions.
The plaintiff next argues that the defendants have failed to create a genuine issue of material fact with respect to the doctrine of part performance. To be relevant, the defendants' conduct must be of the following character:
 "[T]he acts of part performance generally `must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or CT Page 3930 knowledge of the other party, and be such acts as alter the relations of the parties.' The acts also must be of such a character that they can be naturally and reasonably accounted for in no other way than by the existence of some contract in relation to the subject matter in dispute . . . ." (citations omitted) Ubysz v. DiPietro, 185 Conn. 47, 54 (1981).
The defendants contend that their making of two payments of $5,000.00 is indicative of part performance. They, however, were already obligated to repay the entire principal balance on demand. Consequently, the payments can be naturally and reasonably accounted for by the existence of the written agreement. The payments are clearly and unquestionably consistent with the written agreement and are therefore inadequate as a matter of law to take the oral agreement out of the statute.
The second prong of the plaintiff's attack on the first special defense is based on the concept of consideration. The plaintiff contends that the defendants have failed to show valid consideration for the oral agreement to extend the time of payment. "[A]ny agreement extending the time of payment of a loan must be supported by valid consideration and requires the debtor to do, or to promise to do, something farther (sic) than, or different from, that which he is already bound to do." StateNational Bank v. Dick, 164 Conn. 523, 529 (1973).
The defendants admit in their brief that "Mr. Jackson's agreement to make monthly payments of $5,000 principal to his existing obligation appears, at first glance, to be illusory. . . ." They argue, nevertheless, that the Jacksons' agreement to make monthly payments against the principal was an agreement to do something different from that which they were already bound to do. The defendants, however, did not incur any additional detriment nor did the plaintiff receive any additional benefit. The defendants were already obligated to repay the plaintiff all of the outstanding principal upon demand, as well as to pay accrued interest on a monthly basis. A promise to do that which one is already bound to do does not constitute valid consideration for a new agreement. Because the defendants have failed to allege or show facts which can establish valid consideration for the extension agreement, the first special defense is legally insufficient for lack of consideration. CT Page 3931
 B
The plaintiff contends that the defendants have failed to allege or show facts under the other special defense which are sufficient to bar a summary judgment. In the second special defense, the defendants repeat the allegations as to the oral agreement to extend the time of payment and, in addition thereto, allege the parties thereby "entered into a novation of the original loan contract." A novation is the substitution of a new contract for the old agreement. If the new agreement is between the same parties, the new agreement is referred to as a substitute contract Riverside Coal Co. v. American Coal Co.,107 Conn. 40, 44-45 (1927). As discussed above, the defendants have neither presented documentary evidence which can be construed as consideration for a substitute agreement nor have they shown facts which can take a substitute agreement out of the statute of frauds. Accordingly, the second special defense is also legally insufficient.
 C
In the third special defense, the defendants repeat the allegations as to the oral agreement to extend the time of payment and, in addition, allege that the bank, by entering into the oral agreement, knowingly and intelligently waived its right under the original loan agreement. The defendants argue that the testimony of Attorney Willis regarding the bank's acceptance of two payments is evidence of waiver. "Waiver is the intentional relinquishment of a known right." Wadia Enterprises, Inc. v.Hirschfeld, 224 Conn. 240, 251 (1992). While "waiver may be inferred from the circumstances if it is reasonable so to do,"Novella v. Hartford Accident Indemnity Co., 163 Conn. 552, 562
(1972), "intention to relinquish must appear." Id. As a matter of law, it is not ; reasonable to infer a lender intentionally relinquished its right to collect a loan in excess of $450,000.00 by its accepting two payments of $5,000.00 each when the entire balance together with unpaid interest was always due upon demand. The defendants have failed to establish a factual basis for the defense of waiver.
 D
In the fourth special defense, the defendants again repeat the allegations relating to the making of the oral agreement and, in addition thereto, allege that the payments constitute an CT Page 3932 accord and satisfaction. "An accord is a contract between creditor and debtor for the settlement of a claim by some performance other than that which is due. Satisfaction takes place when the accord is executed." W. H. McCune, Inc. v. Revzon,151 Conn. 107, 109 (1963). The defendants argue that the plaintiff's acceptance of the two $5,000.00 payments "represents a manifestation of plaintiff's acceptance of the new terms, and is therefore an accord and satisfaction."
The plaintiff argues that the defense of accord and satisfaction fails "because the defendants are unable to allege and prove (i) a new agreement with new consideration, and (ii) that the plaintiff agreed that the two $5,000.00 payments tendered by the defendants were in satisfaction of the entire loan obligation." An accord, like other agreements, requires consideration. "The defense of accord and satisfaction requires the defendant to allege and prove a new contract based upon a new consideration." Crucible Steel Co. v. Premier Mfg. Co.,94 Conn. 652, 656 (1920). The defendants rely on an oral agreement to extend the payment of a specific, liquidated sum. An agreement to pay only part of a specific sum is not consideration for an accord. W. H. McLune, Inc. v. Revzon, supra at 109. As a matter of law, the oral agreement is not supported by consideration.
The defendants have also failed to establish a factual predicate for this court to conclude that a genuine issue of material fact exists as to the intent of the parties to agree to an accord. "There must be a meeting of the minds. The new consideration must be offered by the debtor and accepted by the creditor with intent to satisfy the whole claim; and when, as in this case, the assent of the creditor is sought to be inferred from the acceptance of a less sum than is claimed to be due, the fact that such sum is offered in discharge of the whole claim must `be made known to the creditor in some unmistakable manner.'" Crucible Steel Co. v. Premier Mfg. Co., supra at 656. None of the documentary evidence submitted by the parties supports an inference that the acts and declarations of the parties amounted to a condition that if the money is accepted, that it is accepted in satisfaction of the loan.
 E
In the fifth special defense, the defendants again allege the oral agreement and, in addition, allege the plaintiff is "acting in bad faith" by accepting the benefit of the oral agreement, CT Page 3933 repudiating the agreement, and bringing suit on the original agreement. This defense is based on the theory the plaintiffs breached an implied duty of good faith by repudiating an oral agreement to extend the time of payment. Because the oral agreement is legally insufficient, as explained above, the bank did not and could not engage in conduct amounting to bad faith.
To summarize the discussion of the special defenses, this court has concluded that the defendants have failed to establish a factual predicate from which this court can find, as a matter of law, that a genuine issue of material fact exists. This conclusion is based on the failure of the defendants to show facts which can take the oral modification out of the Statute of Frauds, provide valid consideration, support a novation, a waiver, or a claim of bad faith.
 IV
The defendants allege in their "set-off, cross-claim and counterclaim" that "[t]he conduct of the plaintiff-bank in attempting to repudiate the side agreement or novation constitutes an unfair or deceptive practice which is in violation of the Connecticut Unfair Trade Practices Act." This claim is based on the bank's failure to abide by the oral agreement to extend the time of payment. Since the defendants have failed to show a basis for a trier of fact to conclude the oral agreement is valid and enforceable, the defendants have shown nothing more than the bank's exercise of its rights under the note. The bank's conduct is insufficient, as a matter of law, to implicate the concept of unfairness or cause the type of substantial injury that the Connecticut Unfair Trade Practices act, General Statutes § 42-110a et seq., was designed to address. See Normand JosefEnterprises, Inc. v. Connecticut National Bank, 230 Conn. 486,521, 525 (1994)
Conclusion
The allegations of the complaint have been established by the plaintiff's documentary evidence. There is no genuine issue of material fact as to the first and second counts. As of May 19, 1994, the defendants owed the plaintiff $391,623.73 in principal, $94,978.00 in interest, and $3,615.21 in late fees for a total obligation of $490,216.00. Interest has accrued on this debt from May 19, 1994, to today at the rate of $95.18 per day. CT Page 3934
The defendants have failed to establish a factual predicate from which this court can find that a genuine issue of material fact exists with respect to the special defenses or the "set-off, cross-claim and counterclaim." As a matter of law, these defenses and claims are insufficient.
Judgment shall enter in favor of the plaintiff in accordance with the foregoing.
THIM, JUDGE
Appendix A
The plaintiff's proof shows the following:
1. On or about April 18, 1989, defendants Lionel S. Jackson and Patricia J. Jackson executed and delivered to the plaintiff a note dated April 18, 1989 entitled "Demand Loan and Security Agreement" in the face amount of $452,000.
2. The plaintiff advanced to the defendants the principal sum of $452,000 pursuant to the terms of the note.
3. Pursuant to the note, the defendants were obligated to pay interest on the unpaid principal balance monthly on the first day of each month, beginning June 1, 1989, and to pay back the principal amount to the plaintiff upon demand.
4. Pursuant to the note, the plaintiff has the right to request additional collateral in order to secure the note.
5. Despite repeated demands by the plaintiff for additional collateral, the defendants have refused to comply with said requests.
6. The plaintiff has exercised its right to declare the entire balance due and payable pursuant to the note.
7. On or about August 2, 1991, the plaintiff made written demand upon the defendants for payment of all amounts pursuant to the note.
8. The defendants have failed and refused to comply with said demand. CT Page 3935
9. By failing to comply with said demand, the defendants have breached their obligations under the note and are in default thereunder.
10. As of August 2, 1991, a total of $398,148.46 was due and owing from the defendants to the plaintiff under the note consisting of principal of $394,500 and interest of $3,648.46.
11. Pursuant to the note, the defendants are liable to the plaintiff for all costs of collection, including, but not limited to, attorney's fees, incurred by the plaintiff in the collection of the amounts due under the note.
12. As of May 19, 1994, the sum of $490,216 is due and owing under the note, including $391,623.73 in principal, $94,978 in interest and $3,615.21 in late fees. Interest continues to accrue at the rate of $95.18 per day until the note is paid in full.
Appendix B
Questions by Attorney Hausman
Answers by Gregory C. Willis
 "Q. Okay. Now, what is alleged here is a modification. Would you have been the one who would have done any negotiating with the bank towards this modification?
A. Yes."
. . . .
 "Q. The special defense does say that on or about June of 1991, mutual agreed —
 A. That is about when. We did arrive at some kind of an agreement, yes.
 Q. When you say `some kind of an agreement,' I'm not aware of any writing. Was there a writing that you recall?
 A. I don't know if there was any writing, no. I think we met and we agreed that certain payments would be made and would be accepted, and our promise to make these payments was in CT Page 3936 consideration of the fact that they would not proceed under the terms of the original agreement, as the three people that I was dealing with were well aware of Lionel's financial problems.
 I had given them complete disclosure of those problems, and they knew that there was no way that this note could be paid off as it was originally scheduled to be."
. . . .
 "Q. Given the dates of the letters, Mr. Willis, one May 31, `91, and one at the end of June of `91, do you think it's possible that any modification that's been alleged could have not been concluded before June 28th?
 A. It's my recollection that it was concluded before June 28th and that after I had reached an agreement with one or two of the people I was dealing with. I don't think the second lady was present at all of our meetings."
. . . .
 "Q. . . . Could you state again what the terms were that you recall of the alleged modification?
 A. . . . It seemed to me it was an agreement, if we paid X number of dollars per month per — part interest and part principal, that they would be happy and that that would substitute for the original agreement which simply couldn't be met.
 Q. Again, not to be redundant, but you do not recall any letter agreement or anything to that effect, it was a hand shake?
 A. I don't recall a letter agreement . . . . . We made some payments and were negotiating to arrive at a conclusion
 So I think it was a hand shake and, `Okay, this is good. Thank you.' That was about it."
 Q. . . . It is possible that you are negotiating from the standpoint of coming to some permanent agreement as to the indebtedness, correct?
A. I don't know as it would be termed a permanent agreement. CT Page 3937 I think that it was an agreement that would be in effect until there was a change in conditions; i.e., if he came into some funds or the painting was freed up.
 Q. To your knowledge, the, or to the best of your recollection, negotiations were not to occur after this point? I mean, this was the sum and substance of whatever agreement there was?
 A. That was certainly my understanding. That was the sum and substance of it. We would come to a conclusion, and they seemed to be happy."
. . . .
 "Q. . . . Do you recall whether or not there was a recitation of terms, you know, prior to your last parting or hand shake, whatever it was?
 A. I think the terms had been discussed on several occasions, and the last time that remember Miss Coyle being in my office, this was the agreement. And we did make several payments under the terms of the agreement, as I recall.
Q. I think it was 5,000 each."
. . . .
 "Q. . . . it's not your understanding, nor had it been, that these payments were unilateral as an expression of faith, it was your understanding this was the agreement you came to?
 A. That was my understanding. It was not something we did unilaterally, that's for sure. The bank accepted it."